2    425
136   600

## WATT'S EX'RS. v. SHEPPARD.

1. In proceeding on a penal bond, the plaintiff may declare for the penalty: or, under the act of 1824, "regulating proceedings on penal bonds," he may set out the condition, either in whole, or in part, and assign one or more breaches; or, if the defendant puts in a plea, which does not tender an issue, he may assign breaches in his replication : and, where judgment is rendered for the plaintiff on demurrerr, or by defanlt, if he has not previously assigned breaches, he may suggest them on the roll.

2. If the declaration be substantially defective in the assignment of breaches, the plaintiff will not be allowed to strike them out after demurrer, on the ground, that the declaration is good without them.

3. In assigning breaches, it is sufficient to state the intention of the parties, as it may be collected from the entire instrument, without using the precise terms in which the intention is expressed.

4. A breach must be so assigned as to show, that the contract has been broken, and that the plaintiff has a cause of action.

5. It is not necessary, that the breach assigned, should negative the performance of the defendant's contract *in toto*; if it has been performed in part, it is enough to aver a non-performance as to the residue.

6. Where several breaches are assigned if the defendant demurs to the whole, if one be good, the declaration will not be held ill ; the correct practice is, to demur to the breaches severally, or only to such as are defective.

7. In the assignment of breaches, the plaintiff should not go beyond the defendant's contract, so as to make it uncertain, whether it has been broken ; yet surplusage furnishes no ground of demurrer.

8. The first general principle in the construction of contracts, is, if possible, to carry into effect the intention of the parties.    To do this, the *subject matter* of the contract, the *situation* of the parties, the *motives* that led to it, and the *object* to be attained by it, are all to be looked to.

9. Such a construction shall, if practicable, be placed upon a contract, as will make every clause operative.

10. Where no time is designated, within which an act is to be done, the law requires it shall be performed in a reasonable time.    What is a reasonable time, is a question of 'fact, depending upon the situation of the subject of the contract, &c., as known to the parties, &c.

11. Where the damages resulting, from the non-performance of a contract, are uncertain, and cannot be admeasured with any degree of accuracy, there the sum agreed to be paid by the party in default, will be regarded as liquidated damages.

12. Where articles covenant for the performance of several things, and stipulate for the payment of a sum in gross, in the event of a breach, the sum expressed will be regarded a penalty ; and, if the parties would stipulate the damages in such a case, they should express the sum to be paid, upon each distinct breach.

13. Where a large sum is agreed to be paid, upon the non-payment of a smaller

sum, or the non-performance of a duty, the damages resulting from which may be ascertained with reasonable certainty, and which is much less than the sum expressed, that sum will be a penalty.

14. Where a party stipulates to perform work by a definite time, and upon default, to pay so much weekly or monthly, if the sum is not so unreasonably large, as to induce the belief, that the parties never contemplated its payment, it will be considered as liquidated damages.

15. Where the damages resulting from a breach of contract are certain, and the sum expressed in one event, would be too small, and in another too large, it cannot be considered liquidated damages.

16. The terms "penal sum"—"liquidated damages," &c., are not conclusive, to show the true character of the sum agreed to be paid in the event of non-performance of a contract.

17. It is permissible to show by proof, the value of property agreed to be conveyed, or delivered; and the consideration moving from the other party therefor, as criteria by which to ascertain, whether a sum agreed to be paid upon default, is a penalty, or liquidated damages.

18. The recital in a contract that, in consequence of the *difficulty* of ascertaining the injury which would result from a non-performance, *the parties agree upon a sum as stipulated damages*, is no evidence of the *difficulty, &c.*; yet it shows, that the parties intended to liquidate the damages by contract; and, if the sum agreed is a reasonable compensation, it is proper that the intention of the parties should be carried in effect.

19. A party undertook to make a title to a large tract of land, and upon a failure to comply with his contract, either in whole or in part, agreed to pay to the obligee, the sum of ten thousand dollars, as stipulated damages. This sum was about the value of the entire tract, at the time the contract was entered into ; the obligee received a title for part of the land, and sought to recover the sum stipulated, for failing to perfect title to the residue—Held, that the obligee might have refused a title to a part, until it was completed to all; but having received it, he could not recover as for an entire breach—if ten thousand dollars was a fair estimate for a failure to convey all the land, it was too much for a part.

20. Where a party undertakes to convey a large tract of land, and upon default, either in whole or in part, agrees to pay a certain sum, as "stipulated damages," if he conveys a part, the measure of damages which the obligee is entitled to recover, is the value of the land not conveyed, estimating the *entire tract* at the *sum stipulated.*

21. S. held the obligation of W. to make him a title to a tract of land, and before title was made to the obligee, the obligee sold the land to C., and brought an action against W. on his obligation—Held, that C.'s declaring himself satisfied with the title which he had, did not bar the action by S. against W.

THIS was an action of debt, brought by the defendant in error against the plaintiff's testator, in the Circuit Court of Dallas. The writing declared on, appears of record, and is as follows: "We, Nancy Wade, Thomas Watts, Buddy Bohannan, Henderson S. Wade, John L. Moody, Young Bohannan, Hud-

son Wade, Memory J. M. Bohannan, Robert E. Bohannan, Young F. Bohannan, and Wiley J. Underwood, acknowledge ourselves, held and firmly bound unto Abraham Sheppard in the sum of fifty thousand dollars, for the payment of which to said Sheppard, his heirs, representatives and assigns, we bind ourselves, each and every of us, our, and each and every of our heirs and representatives; witness our hands and seals, this 23d day of December, A. D. 1834. The above obligation is entered into, for the purpose of securing to said Sheppard, his heirs, &c. a performance of the conditions and stipulations following to wit: the said Sheppard claims title, by purchase from James Wade, deceased, to a certain tract of land, situated near the mouth of Cedar Creek, and below the same, in Dallas county, and containing about three thousand acres; Sheppard also claims title to all the negroes, which were on said plantation at the death of said Wade, being about one hundred and twenty-four in number; he also claims one-half the crop, raised on said plantation the present year, to wit: the year A. D. 1834, together with all the stock, plantation tools, &c. being on said plantation. This claim is set up by Sheppard, under, and by virtue of, two instruments or deeds, executed by said Wade to said Sheppard, dated 17th March, 1834, or about, and tested by Kinchen F. McKinney and Willis Carr. The aforesaid obligors, claiming to be interested in said property, as, and for the other heirs of said James Wade, propose to obtain from said Sheppard, a rescission of the contract under which he claims; and a surrender to them, for all the right heirs of said James Wade, of all the interest of said Sheppard, in the aforesaid lands, negroes and other property; and as the consideration to said Sheppard, for his rescission of said contract made with said Wade; and his, the said Sheppard's surrender and release to said obligors, of all his interest in the aforesaid lands, negroes and other property, claimed by him under said contract, with said James Wade, all which rescission, surrender and release, the said Sheppard, has done and executed by deed: we, the above named obligors have agreed, and do hereby agree to convey, or cause to be conveyed, by good and effectual titles, in fee simple, to the said Sheppard, his heirs, representatives, or assigns, the following described lands,

situated in Dallas county, to-wit: that portion of section sixteen, in township fourteen, and range ten, containing four hundred and forty acres, or about that, which was purchased by said James Wade in his life time; he, Sheppard paying the notes given for the purchase money by said Wade; also, fractional section seventeen, east of the Alabama river; also the North West quarter section, of section twenty-one, in township fourteen, and range ten. We also agree to deliver, or cause to be delivered to him, said Sheppard, the one half of the cotton crop raised on the plantation above described, as near the mouth of Cedar Creek, this present year to-wit: A. D. 1834; also one entire crib of corn, now being on said plantation, and which is to be such one as may be chosen by said Sheppard; also, twelve stacks of fodder; also, a reasonable portion of the present crop of potatoes; all which property is now on said plantation; one half of the cotton, now ginned and packed, to be delivered to said Sheppard as soon as is convenient; and the balance to be divided as it is ginned and packed, not waiting till the whole shall be ginned and packed; or as soon as convenient, after a portion is ginned and packed—the whole to be delivered by the first day of April, A. D. 1835, and so of the other personal property. This forms the consideration stipulated to said Sheppard for his rescission, surrender and release as aforesaid; and in as much as it would be difficult to determine the injury or loss, which would accrue to said Sheppard, from a non-compliance on our part, the parties agree on the following as stipulated damages in the cases mentioned, to-wit: on failure to convey or cause to be conveyed in the manner stated, the land described, or any part thereof, the stipulated damages to be ten thousand dollars: on failure to deliver or cause to be delivered to said Sheppard, the above mentioned personal property, or any part, by the time stated, we agree to pay Sheppard as stipulated damages, the sum of fifteen thousand dollars. We covenant with Sheppard, that he may take possession of the land intended to be conveyed to him, as above stated, as soon as he may think fit, and that he may retain possession thereof, and cultivate the same; and we guarantee to him continued possession thereof. If he should be turned out of possession by suit, by any one holding title, we agree to pay

him stipulated damages, the sum of ten thousand dollars. Those, who may at any time sign the obligation, covenant that all those named in the commencement of this obligation, shall, as soon as convenient execute the same, which shall not extend beyond one year, or shall convey to said Sheppard their interest in said property.

We covenant, that Sheppard shall have the titles perfected to him in one year; and if any legal steps should, become necessary to obtain perfect titles to said land, we covenant with Sheppard, that such legal steps shall be effectual in obtaining such titles; otherwise, we are to pay the stipulated damages of ten thousand dollars, first above agreed on. In the deed from the said James Wade to the said Sheppard, the latter stipulates not to sell, or convey any property mentioned in said deed, during the twenty years, within which said contract was to be performed on the part of Sheppard. Now, we covenant to save harmless the said Sheppard against the operation of said provision, so far as the making the surrender and transfer herein mentioned, may be considered a breach of said stipulation. The liquidated damages mentioned, are not to prevent general damages, for any other breach not alluded to. We bind our heirs and representatives, jointly and severally, for the fulfilment of all the covenants and stipulations of this deed. If all the stipulations, covenants and conditions of the above agreement are complied with, the above obligations to be void, otherwise to be in force. The title deeds of the heirs, are to be obtained and handed to Sheppard by the obligors."

The declaration in its commencement, claims fifty thousand dollars as the debt, and assigns five distinct breaches. The first alledges, that titles to a part of the land, agreed to be conveyed by the obligors to the plaintiff below, have not been perfected; though they had stipulated to convey the same, in twelve months from the time of the execution of their obligation. The part of the land, to which titles had been completed, was " the fractional section, seventeen, east of Alabama river, and the north west quarter, of section twenty-one, in township fourteen, and range ten. The second breach, alleges the expenditure by the plaintiff below, of one hundred dollars, in endeavoring to perfect his title. The third breach, avers a failure to

convey to the plaintiff by the obligors, the lands described in the first breach, according to the terms of their obligation. The fourth breach avers, that some of the obligors, particularly named, have failed to convey to the plaintiff, their interest as tenants in common, in the lands designated in the third breach. The fifth breach avers, that neither all, nor any of the obligors, and particularly three, who are named therein, have made effectual conveyances in fee simple to the plaintiff, to the part of the lands described as above. All the breaches except the second, deduce, as a consequence of the failure to convey, a liability to pay ten thousand dollars, as liquidated damages.

The declaration in conclusion, alledges that by reason of the several breaches, the writing obligatory became forfeited, and an action accrued to have, and demand the sum of fifty thousand dollars, &c. The non-payment of which sum, or any part thereof, is averred, to the plaintiff's damage, twenty thousand dollars.

The defendants demurred to the declaration, and their demurrer being overruled, they pleaded—1. *Nil debet.* 2. A performance of the several stipulations contained in the writing obligatory, a breach of which, was alledged. 3. A performance of these stipulations, so far as it was practicable. To the first and third pleas, the plaintiff demurred; and on the second, issue was joined; the demurrer was sustained, and the case submitted to a jury, who returned a verdict in favor of the plaintiff, for ten thousand dollars damages.

On the trial, the defendant below excepted to the ruling of the presiding judge. From the bill of exceptions, it appears, among other things, that the plaintiff was in possession of the lands, to which the obligors had agreed to make titles, at the time the writing obligatory was executed; and had occupied the same by himself and his vendee ever since, without molestation. No actual damages were shown to have been sustained by the plaintiff; though it was proved that several of the heirs of James Wade, deceased, had not conveyed their interest in the lands to which it was alledged, that titles had not been perfected; and the vendee also declared on the trial, that he was satisfied with the title received from the plaintiff below. The Court charged the jury that, as the defendant and his co-obli-

gors had stipulated the sum of ten thousand dollars as damages, in the event of a failure to complete the plaintiff's title, to the lands agreed to be conveyed; they should regard that sum as a criterion, by which to determine the extent of the defendant's liability, if the plaintiff had made out his case by proof. And that, if any title to the land, or any part of it, remained in any of the heirs of Wade, the defendant was bound to pay the sum of ten thousand dollars, as the damages fixed and agreed by the parties.

Judgment being rendered against the defendant's testator, he prosecuted a writ of error to this Court; which has been revived in the name of his executors.

Hopkins and Thornton, for the plaintiffs in error.

Edwards and Campbell, for the defendant.

COLLIER, C. J.—The arguments at the bar, make it necessary for us to consider these questions—

1st. Did the Circuit Court err in overruling the demurrer to the declaration?

2nd. Is the charge of the Court to the jury, authorized by the contract of the parties?

First—The act of 1824, "regulating proceedings on penal bonds," Aik. Dig. 273, is substantially a transcript of the statute; 8 and 9, Wm. 3, Ch. 11, Sec. 8; and enacts that, "in all actions in any Court of record, upon any bond, or on any penal sum, for non-performance of any covenants or agreements, contained in any indenture, deed, or writing, the plaintiff or plaintiffs may assign as many breaches as he or they may think fit" &c. In proceeding under this act, by analogy to the practice which has grown up under the English statute, the plaintiff, at his election declares for the penalty, without noticing the condition, or sets out the condition, either in whole, or in part, and assigns one or more breaches; if he does not assign them in the declaration, he may assign them in his replication, if the defendant puts in a plea, which does not tender an issue. Where a judgment is rendered for the plaintiff, upon demurrer, or by default, if he has not previously assigned breaches, he may suggest upon the roll (as it is termed in law parlance) the breaches

for which he seeks to recover satisfaction. The mode in which the plaintiff is to declare, reply, or make suggestions, upon the roll, is clearly pointed out by the learned annotator upon Saunders. (See notes to Gainsford v. Griffith, 1 Saund. Rep. 58; and notes to Robert v. Mariett, 2 Saund. Rep. 187, part 11.

In the case before us, the plaintiff has elected to assign the breaches, for which he seeks to recover in his declaration; and the question is, whether they are so stated, as to show upon the record a good cause of action. If, in this respect, the declaration be substantially defective, after demurrer, the plaintiff will not be permitted to strike out the assignment of breaches, on the ground, that the declaration is good without it. (Dixon v. The United States, 1 Brockenb Rep. 177.)

In assigning breaches, it is not necessary to use the precise terms of the covenant or agreement sued on; but it is sufficient to state the intention of the parties, as it may be collected from the instrument itself. (Bustor's Ex'r. v. Wallace, 4 Hen. & Munf. Rep. 82; Day, et al. v. Chism, 10 Wheat. Rep. 449; Bristock v. Stanton, 1 Ld. Raym. Rep. 106; Alebury v. Walby, 1 Stra. Rep. 229; Smith v. Sharp, 5 Mod. Rep. 133.; Thorncroft v. Barnes, 10 Mod. Rep. 150.) But a defective statement of a breach, so that thereby the contract does not appear to have been broken, would be bad on demurrer; and even after verdict. (Lunn v. Payne, 6 Taunt. Rep. 140; Siclemore v. Thistleton, 6, M & S. 9.) Enough must be placed on the record to show that the contract has been broken; and that the plaintiff has a cause of action. (Breckenridge v. Lee, 3 Bibb's Rep. 330; Hord v. Trimble, 3 Marsh. Rep. 533.) A mere informal allegation however, if there be sufficient matter to show a breach, would not be a fatal objection on general demurrer. (Charnley v. Winstanley, 5 East Rep. 270; Perrean v. Bevan, 5 B. & C. Rep. 284.)

It is not necessary, that the breach assigned, should negative the performance of the defendant's contract in every particular; if it has been performed in part, it is enough to aver a nonperformance as to the residue. Thus in Dale v. Roosevelt, 9 Cow. Rep. 308, the plaintiff declared on a covenant, to pay *forty-four hundred dollars* in cash; and alledged that the defendant had not paid *four thousand dollars;* the breach was

held to be well assigned ; the Court considered that the declaration merely limited the damages to the amount unpaid.

Where several breaches are assigned, if one be good, the defendant cannot demur to the whole; and, if he does, the declaration cannot be held ill ; the correct practice, is to demur to the breaches severally, or, only to such as are defective. [Duffield v. Scott, 3 T.'s Rep. 374 ; Samuel v. Judin,, 6 East. Rep. 333; Powdick v. Lyon, 11 East. Rep. 565 ; Orton v. Butler, 5 Bar. & Ald. Rep. 652 ; McCoy v. Hill; 2 Litt. Rep. 374 ; 1 Saund. Rep., note 9, 285, 6.

Although in assigning a breach, the plaintiff should not alledge it to be more extensive, than the defendant's contract, so as to make it uncertain, whether the contract has been broken. [Com. Dig. Pleader, C. 47; Spires v. Parker, 1 T. Rep. 144.] Yet, surplusage furnishes no ground of demurrer, the maxim being *utile per inutile non vitiatur.* [Stephens' Pl. 422, *et post.*

It remains for us to apply the principles laid down, to the declaration in the case at bar. The plaintiff has made his declaration unnecessarily prolix, by embodying *in extenso,* the bond of the testator, with all the stipulations contained in the condition ; as also, by the number of breaches assigned; and the unusual length of each assignment. This mode of declaring was doubtless, adopted *ex majore cautela,* and furnishes in itself no ground of demurrer.

Without undertaking to inquire, whether all the breaches assigned, do not alledge a violation of the defendant's contract ; we think it entirely clear, that the first and third negative a performance. We have seen, that the plaintiff need not declare for an entire breach ; but he is entitled to recover damages for such part of the contract, as is unperformed. Thus, in the present case, if a conveyance has been made and accepted, to a part of the land agreed to be conveyed to the plaintiff, he may sue and recover for a failure to make title to the residue.

It was argued for the plaintiff, that the first and third breaches are not well assigned ; because they insist upon the plaintiff's right to recover ten thousand dollars, stipulated damages, as a consqeunce of the non-performance of the acts

alledged.  These assignments, after stating the failure to make title, the first within *twelve months,* and the third *generally,* then deduce the liability to pay the ten thousand dollars. These deductions must be regarded as surplusage, and cannot affect the assignments, which are full and complete, without them—the excessive statement may be stricken out, or disregarded.

There being several good assignments, it is immaterial, whether the others were demurable ; the demurrer being to the entire declaration could not have been sustained.  The correct practice, we have seen, is to demur severally to the breaches. This view disposes of the objections to the declarations, and it follow, that the demurrer was properly overruled.

Second : The question arising upon the instruction of the Judge, is, does the contract of the parties liquidate the damages, which the obligors should pay, in the event of a failure to make title to the lands, agreed to be conveyed to the plaintiff below?  In order to the solution of this question, we must consider what acts they agreed to perform, and what principles are to guide us in distinguishing between a penalty and liquidated damages.  The first branch of this inquiry, leads us to examine into the contract of the parties, and to determine what are the obligations it enjoins.

The first general principle in the construction of all contracts, is, that they shall be so expounded, as to carry into effect the intention of the parties.  To this end, the Court should, if necessary, look to the *subject matter* of the contract, the *situation* of the parties, the *motives* that led to it, and the *object* intended to be attained by it.  [Hollingsworth v. Fry, 4 Dall. Rep. 345 ; Hopkins v. Young, 11 Mass. Rep. 302 ; Howland v. Leach, 11 Pick. Rep. 154; Davis v. Barney, 2 Gill & Johns, Rep. 382.]  The intention is not to be collected from a single clause in a writing, but from the entire context; and it is immaterial in what part of a deed, any particular stipulation may be inserted; for the exposition must be, upon the whole instrument, *ex antecedentibvs, et consequentibus,* and according to the reasonable sense and construction of the words.  All latitude of construction must submit to the restriction, that the

language of the instrument will bear the sense sought to be put upon it. [Chitty on Con. 4, Am. ed. 62 to 75; Platt on Covenants, 136, et post, 3 vol. L Lib.

Again: Such an exposition shall be made of a deed, if practicable, as will give efficiency to every clause. And when no time is designated, within which an act shall be done, the law requires, that it shall be performed in a reasonable time. [Platt on Cov. 145.]

The agreement of the parties in the case before us, so far as it is material to notice it, may be thus succinctly stated. The plaintiff below, claimed to be the purchaser from James Wade, deceased, of a large tract of land, and a great number slaves; and also, of one half of the crop produced on the land in the year 1834, together with stock, plantation tools, &c; which claim was evidenced by two written instruments, executed by the decedent in his lifetime. Thomas Watts and his co-obligors being interested in the estate of Wade, and desirous of obtaining from Sheppard a relinquishment of the claim, set up under his purchase, entered into a contract with him; by which they stipulated, that, in consideration, that he had released and rescinded the contract made between Wade and himself, they would convey, or cause to be conveyed to him, by good and effectual titles, in fee simple, several tracts of land particularly designated. The obligors stipulate further, that they would deliver, or cause to be delivered to Sheppard, one half the cotton crop, &c. by the first of April, 1835. And, as it would be difficult to estimate the damages, which Sheppard would sustain by the non-compliance on the part of the obligors, " the parties agree on the following, as stipulated damages, in the cases mentioned, to wit: on failure to convey, or cause to be conveyed in the manner stated, the land described, or any part thereof, the stipulated damages, to be ten thousand dollars." In respect to the personal property, the obligors stipulate to pay fifteen thousand dollars damages, should they fail to deliver all, or any part thereof, at the time appointed.

The obligors agree, that Sheppard may take possession of the lands to be conveyed to him, and may retain possession of, and cultivate the same; and, if ejected by suit, they stipulate

to pay him ten thousand dollars as damages. In the contract, it is recited, that others are interested with the obligors in the estate of Wade ; and it is therefore covenanted, that all who are " named in the commencement of the obligation," shall, within one year, execute the same, or convey their interest in the property described, to Sheppard.

The obligors further covenant, that Sheppard shall have the titles perfected to him in one year ; and, if legal steps should become necessary to perfect title to the land to be conveyed, they covenant, that such steps shall be affectual, " otherwise they covenant to pay ten thousand dollars, the stipulated damages first above agreed on."

It is also agreed, that " the liquidated damages mentioned, are not to prevent general damages for any other breach not alluded to." The agreement contains other stipulations ; but as they can have no influence in determining the construction of the covenants to make title to the land, it is not necessary to notice them.

The object to be effected by the obligors, was the rescission of the contract between Wade and Sheppard ; and, as an inducement to the latter to meet their wishes, they undertake to convey to him title to several tracts of land, and to deliver to him certain personal property. The record informs us, that the title to the lands to be conveyed, was in the heirs of Wade ; that these heirs were numerous ; and that some of them were *femes covert*, and others infants. Such being the character of the persons whose title was to be transferred to the obligee, a resort to " legal steps" must have been anticipated, as the only effectual means of divesting the interest of the infants. The time required to effect this purpose, was altogether uncertain, but, in all probability, much more than twelve months.

Under these circumstances, it cannot be supposed, if the language employed will admit of any other reasonable interpretation, that the obligors intended to stipulate for the payment of ten thousand dollars as damages, if they failed to perfect title to the obligee in one year. Had such have been the contract of the parties, it was most easy and natural to have expressed

it, as a part of the *first* covenant to convey, instead of agreeing to convey generally.

If the title was to have been perfected in one year, or, in the event of a failure, damages, equivalent in value, and in lieu of the title, were to be paid, where was the necessity of stipulating, that all whose names were recited in the obligation, should execute the same, or convey their interest in the lands in one year. The obligation became operative *eo instanti*, upon those executing it; and its execution by others, would not absolve them from the force of the covenant to convey within a definite period. And, if liquidated damages were paid for the failure to complete title within that time, the covenant to cause the obligation to be executed, would become, *ipso facto*, discharged.

The undertaking to pay liquidated damages, is not annexed to the covenant to perfect titles in one year. But the obligors " covenant to pay ten thousand dollars, the stipulated damages, first above agreed on," if " legal steps " shall prove ineffectual to complete title. By the "damages first above agreed on," we are to understand the obligors to mean, such as are annexed to the covenant to convey generally. We might, it is true, if the *subject matter* of the contract, the *situation* of the parties, and the circumstances under which it was made, require it, refer back the agreement to pay damages, to the covenant to convey within one year. But there is nothing in the terms used to make such a construction imperative; and it is unreasonable, as already shown, to suppose the parties intended thus to stipulate.

The covenant to perfect title within one year, if broken, subjected the obligors to the payment of nominal damages certainly; and to such further damages as the obligee might sustain. Little injury would usually result to the obligee, for the want of a prompt compliance with such a covenant; and it might, perhaps, have been assented to, without an apprehension of serious consequences. But the case would be greatly changed, if a definite sum in damages had been stipulated, as the consequence of a breach—that sum would be recoverable, without reference to the injury done the obligee.

The covenants to convey titles generally, did not bind the obligors to a performance in any definite period; but, as we have already said, it required title to be made in a *reasonable time.* What would be a *reasonable time,* is a question of fact, depending upon the situation of the title, as known to the parties, &c. The obligors and obligees seem to have looked forward to a resort to " legal measures " as probable, in order to have enabled the former to make titles. If it were necessary to ask the aid of a Court, a *reasonable time* should be allowed to commence and prosecute the suit to a close. The parties considered the ineffectual prosecution of a suit by the obligors, as tantamount to a failure to make title in a *reasonable time;* for, it is stipulated that, in that event, the ten thousand dollars shall be paid. If the damages are to be regarded as liquidated, these covenants are, in some sense, equivalent; for the obligee could not recover the damages for the breach of each; but a recovery for the failure to make title, would bar a suit for a breach resulting from the ineffectual prosecution of a suit.

The obligors bind themselves to a performance of their contract, under a penalty of fifty thousand dollars; and agree, that " the liquidated damages mentioned, are not to prevent general damages for any other breach not alluded to." This clause is not well expressed; but the obvious meaning of the parties is, that the obligors shall be liable to pay the obligee such damages as he may sustain for the breach of those covenants, for which damages are not stipulated. Hear is a clear indication, that the parties themselves did not suppose, that they had agreed upon the loss which the obligee would sustain by each breach of the obligors' contract; and that the parties were not mistaken in this particular, we think has been sufficiently shewn.

It is exceedingly difficult, if not impracticable, to educe from the adjudged cases, any general principles, by which it may be determined, in all cases, whether a sum annexed to a contract, is to be regarded as a penalty, or liquidated damages. Mr. Dane, after stating many cases upon the point, concludes, that if there be any such principle, it is this: " That

whenever one agrees to perform services, &c., and if he fail, to forfeit such a sum, this sum is the measure of damages, whenever it may be inferred the parties so intended it, or whenever it is the best rule in the case, from the uncertainty in applying any other, for want of a measure of damages." Comyn, in his treatise on contracts, (2 vol. 537,) lays down certain rules upon this subject, deduced from some of the leading English cases, decided previous to the time that he wrote. But, as we shall notice these cases, it is unnecessary to state the rules which he extracts from them. Chitty, in his work upon the same subject, (4 Am. ed. 676,) says, "It may be safely remarked, that the Courts have shown an inclination to view, if possible, the sum reserved, as in the nature of a penalty, rather than as stipulated damages." And declaring the difficulty, often experienced, of distinguishing between a penalty and stipulated damages, without stating any general principles, he notices such of the English decisions "upon this matter, as furnish rules by which the intention of the parties may be ascertained."

It has been held, that where a lessee covenants, that in case any part of the ancient meadow or pasture ground, should be converted into tillage, he would pay the further yearly rent or sum of £5, for every acre so to be broke up or converted into tillage, the increased rent is not to be considered as a penalty, but as a satisfaction, liquidated by the agreement of the parties. [Rolfe v. Peterson, 2 Bro. P. C. 436; Ponsonby v. Adams, ibid. 431.] So where a man promised a woman, that he would not marry with any person besides herself; if he did, he promised to pay to her one thousand pounds, within three months after he should marry any body else. Ten years thereafter, the man married another woman. An action of covenant was brought upon the instrument. Upon the trial at *nisi prius*, the Court directed the jury to return a verdict for the plaintiff, for one thousand pounds, if they thought the deed to be good. The jury having found for the plaintiff, the defendant moved for a new trial, with liberty also to move afterwards in arrest of judgment. The King's Bench held, that the damages were liquidated by the deed—that one thousand pounds was the true and proper *quantum* of damages; the motion for a new

trial was, therefore, overruled. But the judgment was arrested, upon the ground that the deed was invalid. [Lowe v. Peers, 4 Burr. Bep. 225.] And, in Fletcher v. Dyche, 2 Term. Rep. 32, the contract sued on, was an agreement by the defendant to pay the plaintiff a sum certain, for repairs to be done by him on a parish church. The defendant pleaded a set off for forty pounds; and alledged, that the plaintiff stipulated to complete the repairs by a certain day; and agreed that he would forfeit, and pay to him, the sum of ten pounds for every week after the expiration of that time until the work was completed. The plea further alledged, that the plaintiff did not, within the time agreed, perform the work; but permitted the same to remain unfinished for the space of four weeks thereafter. To this plea, there was a demurrer; and it was insisted for the plaintiff, that the weekly payments were in the nature of a penalty, and could not be set off; but the Court held, that these payments were in the nature of liquidated damages, and might be set off.

Astley v. Weldon, 2 Bos. & Pul. Rep. 346, is a leading case upon this head. In that case, it appears that the parties had entered into an agreement, by which the defendant agreed to perform at the plaintiff's theatre for a term of years; and the plaintiff agreed to pay a weekly salary, and the defendant's travelling expenses; and the defendant agreed to attend rehearsals, and to pay such fines as should be inflicted, for non-observance of the regulations of the theatre, &c.: "and, lastly, it was thereby agreed by the parties, that either of them neglecting to perform their agreement, according to the tenor and effect, and true intent and meaning thereof, should pay to the other of them the full sum of two hundred pounds," &c. The Court held, that the sum mentioned in the agreement, was in the nature of a penalty, and not liquidated damages. And Mr. Justice Heath said, "It is very difficult to lay down any general principle in cases of this kind; but I think there is one which may be safely stated. Where articles contain covenants for the performance of several things; and then one large sum is stated at the end, to be paid upon breach of performance, that must be considered as a penalty. But where it is

agreed, that if a party do such a particular thing, such a sum shall be paid by him, there the sum stated, may be treated as liquidated damages." So, in Davies v. Penton, 6 Barnw. & Cresw. Rep. 216; one party agreed with the other to sell to him the stock and the good will of his business, and to demise to him his house in which the business was carried on, for which the purchaser was to pay eight hundred pounds, and to take furniture and fixtures at a valuation. They were afterwards valued at one hundred seventy-four pounds; four hundred pounds were paid to the seller at the time of executing the agreement; and the purchaser agreed to accept and pay two bills of exchange, one for four hundred pounds, payable twelve months after date, the other for one hundred and seventy-four pounds, payable two months after date; and the seller agreed not to carry on the business within five miles of the house. And, for the true performance of this agreement, each of them did thereby bind and oblige himself to the other of them, *in the penal sum of five hundred pounds*, to be recoverable for breach of the said agreement, in a Court of law, as, and by way of liquidated damages. It was held, that this sum was a penalty, and not liquidated damages. The Court laid no stress upon the terms, "penal sum," and "liquidated damages;" but attained a conclusion by a reference to the intention of the parties, as gathered from all the parts of the contract. The Court thought it could not have been intended to fix the sum of five hundred pounds as a *maximum*, if nothing was paid upon either of the bills; for the undertaking was to pay five hundred and seventy-four pounds, the amount of both. On the other hand, if the four hundred pound bill had been paid, and that for one hundred and seventy-four pounds alone remained unpaid, the five hundred pounds would much exceed a fair compensation for that breach of the agreement.

The case of Kemble v. Farren, 6 Bing. Rep. 141, perhaps goes farther than any other towards settling the law on this perplexed subject. That was an action of *assumpsit*, to recover liquidated damages for the violation of an agreement, by which the defendant had engaged himself to act as princi-

33

pal comedian at Covent Garden Theatre, for four seasons, commencing, &c.; and, in all things, to conform to the regulations of the theatre. The plaintiff agreed to pay the defendant three pounds six shillings and eight pence every night, on which the theatre should be open for theatrical performances, during the ensuing four seasons; and that the defendant should be allowed one benefit night during each season, &c. The agreement contained a clause, that if either of the parties should neglect or refuse to fulfil the same, *or any part thereof, or any stipulation therein contained*, such party should pay to the other, the sum of one thousand pounds; to which sum, it was thereby agreed, that the damages sustained by any such omission, neglect, or refusal, should amount; and which was thereby declared by the parties *to be liquidated and ascertained damages, and not a penalty, or penal sum, or in the nature thereof*. The breach alledged was, that the defendant refused to act during the second season. Tindal, Chief Justice, in delivering the opinion of the Court, said: " It is, undoubtedly, difficult to suppose any words more precise or explicit than those used in the agreement; the same declaring, not only affirmatively, that the sum of one thousand pounds should be taken as liquidated damages; but negatively, also, that it should not be considered as a penalty, or in the nature thereof. And if the clause had been limited to breaches which were of an uncertain nature and amount, we should have thought it would have had the effect of ascertaining the damages upon any such breach at one thousand pounds. For we see nothing illegal, or unreasonable, in the parties, by their mutual agreement, settling the amount of damages, uncertain in their nature, at any sum upon which they may agree. But, in the present case, the clause is not so confined—it extends to the breach of any stipulation by either party. If, therefore, on the one hand, the plaintiff had neglected to make a single payment of three pounds six shillings and six pence per day; or, on the other hand, the defendant had refused to conform to any usual regulation of the theatre, however minute or unimportant, it must have been contended, that the clause in question, in either case, would have given the stipulated damages of one thousand pounds. But that a very large sum should become im-

mediately payable, in consequence of the non-payment of a very small sum, and that the former should not be considered as a penalty, appears to be a contradiction in terms; the case being precisely that in which Courts of equity have always relieved, and against which Courts of law have, in modern times, endeavored to relieve, by directing juries to assess the real damages sustained by the breach of the agreement."

The cases of Astley v. Weldon, and Kemble v. Farren, have been often recognized by the American Courts. In Dakin v. Williams, 17 Wend. Rep. 447, it appeared, that the plaintiff gave three thousand dollars for the patronage and good will of a newspaper establishment, and five hunred dollars for the type and printing apparatus; and the defendants (the vendors) covenanted, that they would not publish, or aid, or assist in the publishing of a rival paper and fixed the measure of damages, at three thousand dollars. The defendant having committed a breach of his agreement, the Court held, that the case, from its peculiar nature, and the uncertainty of arriving at a correct conclusion as to the amount of damages, was a proper one for the application of the rule, that the sum agreed upon, should be regarded as *stipulated damages,* and not penalty. In Dennis v. Cummins, 3 Johns. cases 297, the plaintiff brought an action of debt, for two thousand dollars, founded on an agreement between the parties for an exchange of lands. The agreement, after mentioning the terms of the exchange, contained the following covenant. And it is further covenanted in, and by the said agreement, by and between the said parties, that in case of failure to fulfil the aforesaid agreement or covenant, on the part of either of the said parties, that the party not fulfilling the said agreement, shall forfeit and pay to the other party, who shall fulfil the said agreement, the sum of two thousand dollars damages." It was decided by the Court, that the sum sought to be recovered was a penalty, and not liquidated damages—the intention of the parties, as inferable from the entire instrument clearly indicated this. The full value of the defendant's property, which was to be exchanged, was only three thousand seven hundred and fifty dollars, and the value of the plaintiffs, considerably less; hence, it was thought to be a strange construction, to suppose that the damages, on a

failure in fulfilling such a bargain, should be two thousand dollars. But the Court said. "It is true that, where it is clearly inferable from the *nature* and *terms* of the contract, that the parties have estimated and liquidated the damages, and have inserted that sum, as the amount to be paid, in case of nonperformance, the Court would be bound so to consider it. The cases, however, in the books, where penalties have been considered in the nature of liquidated damages, are, either where it appears from the contract, that the penalties have barely exceeded the damages sustained, or where, from the nature and circumstances of the case, no rule for estimating the actual damages could be adopted, or it was manifestly the intention of the parties, that the sum inserted should be considered as a *compensation*, and not as a penalty." [See further upon this subject, Bright v. Rowland, 3 Howard 'sRep. 398; Perkins et al. v. Lyman, 11 Mass. Rep. 76; Gray v. Crosby, 18 Johns. Rep. 219; Nobles v. Bates, 7 Cow. Rep. 307; Hasbronck v. Tappen, 15 Johns. Rep. 200; Ayres v. Pease, 12 Wend. Rep. 393; Robeson v. Whitesides, 16 S. & R. Rep. 320; Abrams v. Kounts, 4 Ham. Rep. 214; Knapp v. Maltby, 13 Wend. Rep. 587; Dyee v. Dorsey, 1 Gill & Johns. Rep. 440; White v. Dingley, 4 Mass. Rep. 433; Upham v. Smith, 7 Mass. Rep. 265; Merrill v. Merrill, 15 Mass. Rep. 448; Stearns v. Barrett, 1 Pick. Rep. 443; Brown v. Bellows, 4 Pick. Rep. 179; Tayloe v. Sandiford, 7 Wheat. Rep. 14.]

In one case it was said, that no case could be found, in which the Court had adjudged a sum to be a *penalty*, where the parties had called it *liquidated* damages. [Kerlly v. Jones, 1 Bing. Rep. 302.] That case is not only unsupported, but is directly opposed by many others, of a later date. The designation of a sum, either as a *penalty* or *liquidated damages*, in a contract is not now considered as conclusive, to show that it should be thus regarded. See the cases cited above, and Pierce v. Fuller, 8 Mass. Rep; 223; 2 Story's Eq. 550; Spencer v. Tilden, 5 Cow. Rep., note b. 150.

So, where a party promised, by a writing (not under seal,) to deliver certain property, or pay a stipulated sum, "for value received;" it was held, that the value of the consideration, and of the property to be delivered, might be inquired into,

Watts' Ex'rs. v. Sheppard.

with a view to see, whether the sum expressed, was intended by the parties, as a penalty, or as liquidated damages; and it appearing, that the sum expressed, was much beyond the value of either, it was held, that it was in nature of a penalty; and that the plaintiff must be confined to the value of the property to be delivered, with interest, as the measure of his damages. (Spencer v. Tilden, 5 Cow. Rep. 144.) The fact, that the contract is evidenced by a writing, under seal, cannot exclude proof to show its true consideration, or the value of property, undertaken to be conveyed, or delivered; if the issue is such, as will tolerate the admission of the evidence, the evidence should not be rejected. (Aik. Dig. sec. 138 p. 283).

We deduce from the authorities cited, these conclusions.

1. Where the damages, which may result from the non-performance of a contract, are uncertain, and cannot be admeasured with any degree of accuracy, there, the sum agreed to be paid by the party in default, will be regarded as liquidated damages.

2. Where articles covenant for the performance of several things, and stipulate for the payment of a sum in gross, in the event of a breach; the sum expressed must be considered as a penalty. And, if the parties would stipulate the damages in such a case, they should express the sum to be paid upon each distinct breach.

3. Where a large sum is agreed to be paid, upon the non-payment of a smaller sum, or the non-performance of a duty; the damages resulting from which, may be ascertained with reasonable certainty, and which is much less than the sum expressed, that sum will be regarded as a penalty.

4. Where a party stipulates to perform work by a definite time, and upon default to pay so much weekly, or monthly; if the sum is not so unreasonably large, as to induce the belief, that the parties never contemplated its payment, it will be considered as liquidated damages.

5. Where the damages resulting from a breach of contract are certain, and the sum expressed in one event would be too small, and in another too large, it cannot be considered as liquidated damages.

6. The terms, " penal sum," liquidated damages," &c., are not conclusive to show the true character of the sum agreed to be paid, in the event of the non-performance of a covenant.

7. It is permissible to show by proof the value of property to be conveyed or delivered, and the consideration moving from the other party therefor, as criteri by which to ascertain, whether a sum agreed to be paid upon default, is a penalty or liquidated damages.

The contract in the case at bar, recites, that, inasmuch as it would be difficult to ascertain the injury to Sheppard, by a non-compliance on the part of the obligors, with their undertaking. " The parties agree on the following, as stipulated damages," &c. In this country, where the sale of lands is so frequent, there can be no difficulty in ascertaining their value ; a reference to other land of equal fertility, similarly situated, furnishes a criterion, by which to estimate it. The recital then, is no evidence of the difficulty of ascertaining the injury, which would result, from a breach of the obligation ; yet, it is satisfactory, to show that the parties intended to liquidate the damages by contract ; and, if the sum agreed on, is a reasonable compensation, it is proper that the intention of the parties should be upheld. The damages stipulated, are ten thousand dollars for a failure to make title to Sheppard, to the lands agreed to be conveyed, and ten thousand dollars, if he should be ejected by some one having title ; being twenty thousand dollars, for the two breaches. The contract, on its face, does not show what was the value of the lands to be conveyed; and in the absence of proof, we cannot intend, that it was less than the aggregate of the damages stipulated. But it appears, from the evidence recited in the bill of exceptions, that these lands were sold by Sheppard, for twenty thousand dollars ; and this, at least, is sufficient evidence, *prima facie*, to show, that there was no great disproportion between the value and the damages stipulated. The sum expressed must then be considered as the damages liquidated by the parties, for a failure to make titles to Sheppard in a reasonable time.

Though ten thousand dollars be the damages stipulated, for the failure to make title to the land, " or any part thereof" yet, that sum cannot be recovered in the present case. It was

competent for Sheppard to have refused a conveyance for a part, until the title was perfected to all; but having received it, the obligors cannot be charged, as for an entire breach. If the sum expressed, was a fair appreciation of the injury, consequent upon a failure to convey all the land; it was certainly an extravagant estimate, for a failure to convey a part of it. The declaration charges as a breach, a failure to make title to a quarter section, and a fractional section of land; impliedly admitting, that the title to four hundred and forty acres, had been perfected; and, if the recovery was not to be diminished to the extent of the comparative value of the land conveyed; upon the same principle, the entire sum stipulated would be the measure of damages, if the title remained incomplete to the poorest acre, in either of the tracts. Such an assumption would strike every one, as unreasonable in the extreme; and producing a result never contemplated by the parties.

In the assessment of damages, the sum expressed in the contract must be looked to—by completing title to a part of the land, the obligee is not entitled to recover general damages; nor can the obligors be thus charged, so as to prevent an abatement of the damages liquidated, to the extent of the relative value of the title conveyed.

The charge of the Court to the jury, must be understood to have been given in reference to the breaches alledged in the declaration; and was erroneons in affirming, in effect, that the damages stipulated for a failure to complete titles, by the testator of the plaintiffs in error, was the sum which they should find for the plaintiff below. Under no state of proof, should the sum, found by the verdict, have exceeded the value of the title to the lands not conveyed; estimating the value of the title of the several parcels agreed to be conveyed at ten thousand dollars. By ascertaining the relative value of each parcel, there would be no difficulty in graduating the recovery, so as to make a proper deduction for the title, so far as perfected, from the sum stipulated.

In regard to the contract, the jury should have been instructed, that the plaintiff was not entitled to recover upon the covenant to perfect titles generally; unless, under the circumstances, a reasonable time had elapsed for that purpose, before the suit

was brought. And, further, that the damages should have been graduated in the manner we have indicated.

The declaration of the purchaser from Sheppard, that he was satisfied with the titles that had been made to him, cannot bar a recovery. Whether his release to Sheppard from all obligation to perfect his title, would be available for the plaintiffs in error, either at law or in equity, is a question, which, as it does not arise upon the record, we decline considering. For the error in the instructions to the jury, the judgment is reversed, and the cause remanded.