*Twenty-first Judicial District.*

### In the Court of Common Pleas of Schuylkill County.

#### A. W. SCHALCK v. ALICIA R. QUIRK.

Whether a clause in a mortgage to pay 10 per cent collection fees in default of prompt payment, is a penalty or liquidated damage.  *Quare.*

When a wife mortgages her real estate for the debt of her husband, she stands as a surety.  All material facts of the contract must be disclosed to a surety.

The contracts of married women at common law, are nullities.  She can only execute such contracts as the act of assembly prescribes.

An agreement to pay 10 per cent collection fees is a contract ( though inserted in the body of the mortgage) and not being of the kind specified by act of assembly, it is rendered void by reason of her coverture.

**Rule to show cause why judgment should not be opened and defendant let into a defence.**

Opinion delivered by

WALKER, J.  This was a scire facias on a mortgage dated 26 Aug., 1871, given by Thomas Quirk and Alicia his wife, in right of the said Alicia to Adolph W. Schalck of two lots of ground and buildings thereon, situate in Pottsville, Schuylkill county.  The mortgage with the accompanying bond was for fifteen hundred dollars, and was made payable on the 26th August, 1872.  The mortgage contained a clause that in case of default of payment when due, a writ of scire facias might be forthwith sued out and the mortgagee proceed to recover the principal and interest of the mortgage *together with ten per cent. per annum of the amount due as commissions for collecting.*  The bond contains a similar clause and has a warrant of attorney attached, to confess judgment, and by virtue thereof

judgment was entered in this court, 28 August, 1871, to September term 1871, No. 623.

On the 31st August, 1872, five days after the mortgage fell due by reason of default, Mr. Schalck issued his scire facias, and in default of an affidavit of defence, took judgment, on the 21 October 1872, for $1764.18, being for the principal of the mortgage with the interest, and *ten* per cent. upon the *aggregate amount.*

The ten per cent. for collecting amounting to $160.38, and it is to this last item that the judgment is asked to be opened, under the rule of the 23d December 1872, obtained by Mrs. Quirk, the defendant.

The facts as appear from the depositions taken, are, that at the execution of this mortgage, Mrs. Alicia R. Quirk was a married woman, and owned in her own right the property mortgaged to Mr. Schalck, to obtain a loan of money for her husband and John McBarron, her father. That she mortgaged her property to secure the payment of this money, and at the time of the execution of it, she swears she knew nothing of the ten per cent. collection, that she was not informed of the fact and did not read the mortgage. Since that time her husband, Thomas Quirk, died.

Under this state of facts, the questions presented are:

1st. Whether the claim of ten per cent. for collection is to be regarded as a penalty, or otherwise?

2d. Whether her position as surety for her husband and father, required a full statement of all material facts to make valid the contract, and to enforce it in a court of law.

3d. And whether her coverture is not a bar to the recovery of money upon such contract.

1st. Is the claim of ten per cent. in the nature of a penalty?

Under the head of "penalties and forfeitures, 2 Story Equity, section 1301," it is laid down that originally in all cases of this sort there was no remedy at law, and the only relief which could be obtained was exclusively sought in courts of equity.

"The true foundations of the relief in equity in all these cases is, that as the penalty is designed as a security, if the party obtains his money or his damages, he gets all that he expected and all that in justice he is entitled to, and notwithstanding the objections sometimes urged against it, this secures a sufficient foundation for the jurisdiction."

"In reason, in conscience, in natural equity there is no ground to say because a man has stipulated for a penalty in case of his omission to do a particular act (the real object of the parties being the performance of the act), that if he omits to do the act, he shall suffer an enormous loss, wholly disproportionate to the injury to the other party."

If it be said that it is his own folly to have such a stipulation, it may equally well be said that the folly of one man cannot authorize gross oppression on the other side.

The law as a securer would be unworthy of the name, if it did not to

some extent provide the means of preventing the mischief of improvidence, rashness, blind confidence, and credulety on one side, and skill, avarice, cunning and gross violation of the principles of morals and conscience on the other.

When a penalty or forfeiture is designed merely as a security to enforce the principal obligation, it is as much against conscience to allow any party to pervert to a different and oppressive purpose, as it would to allow him to substitute another for the principal obligation.

The whole system of equity jurisprudence proceeds upon the ground, that a party having a legal right shall not be permitted to avail himself of it for the purposes of injustice, or fraud, or oppression or harsh and vindictive injury.  2 Story Eq. 547.

"When a large sum is agreed to be paid, upon the non-payment of a smaller; or, the non-performance of a duty, the damages resulting from which may be ascertained with reasonable certainty, and which is much less than the sum expressed, that sum will be penalty. Watts *v.* Sheppard, 2 Ala. 425.

So when a party to a contract stipulates to perform one or more things, and in the event of non-performance of any or all of them, agrees to pay a certain sum, the sum agreed to be paid will be regarded as a penalty, and not as liquidated damages.  Owens *v.* Hodges, 1 McMullen 106.

In the case of a common bond, the penalty is double the amount of the debt due, and which is but the security for the payment of unliquidated damages, those damages being merely the debt interest and costs.

While this no doubt is the law relative to penalties in bonds, yet the supreme court of this state in the case of Robinson *v.* Loomis, 1 P. F. Smith 78, have decided that a stipulation in a mortgage for five per cent. attorney collection fees is not a penalty, but an agreed compensation to the mortgagee for expenses *incurred* by the default of the mortgagor.

In that case, though, there was no evidence of the actual expenses of the plaintiff in the suit, yet there were no doubt some expenses, and the court left the contract of the parties stand, on the ground that it was a fair compensation to cover the expenses which the mortgagee had sustained in bringing suit.  In this case the amount is double, and the plaintiff has paid nothing for professional services, being himself a lawyer, and having commenced suit himself.  Of course there must be some line drawn between penalties and liquidated damages, and as the supreme court have ruled that the five per cent. attorney fees are not a penalty, we cannot say that it is in this case, especially as it does not determine the result of this application.

2. As a surety all material facts should be disclosed to her.

The testimony in this case discloses the fact that the mortgage was given by Mrs. Quirk to secure the payment of money borrowed for her husband and father.  This would undoubtedly make her a surety, *"for*

*when a wife joins with her husband in granting a mortgage upon her estate for the debt of her husband, she stands as a surety.*" Miner *v.* Graham, 12 Harris 495. Sheidle *v.* Weishlce, 4 Harris, 134.

As a general rule *suppressio veri* is a just cause for setting aside contracts in equity. Brightly's Equity Jurisprudence, § 62.

In cases of mutual dealings between strangers, the law does not require that all extrinsic circumstances should be known to each, such as the occurrence of war or peace, the rise or fall of the markets, the character of the neighborhood, the increase or denunciation of duties or the like, the rule of the common law is *"caveat emptor."* Brightly's Equity Jurisprudence, § 64; Story's Equity § 210–212; Kent's Com. 2 vol. 478–479, star page.

But when the parties stand in a *fiduciary relation*, the utmost degree of good faith is required in making contracts with each other, and the misrepresentation, or concealment of any material fact, will induce courts of equity to pronounce such transactions void. Brightly's Equity Jurisprudence, § 68.

Such is the relationship of landlord and tenant, of partner and partners, of principal and surety, and various others, when mutual agencies, rights and duties are created between the parties by their own voluntary acts or by operation of law. Story's Equity 1 vol. § 323.

The case of principal and surety, however, is a striking illustration of this doctrine. The contract of suretyship imparts entire good faith and confidence between the parties in regard to the whole transaction. Any concealment of material facts, or any express or implied misrepresentations of such facts taken of the principal by the creditor, or by withholding proper information, will undoubtedly furnish a sufficient ground to invalidate the contract. Story's Equity, 1 vol., § 324. So if the creditor does any act injurious to the surety. Ibid, § 325.

Or, if he enters into a new contract with the principal inconsistent with the former, or for a consideration should postpone the day of payment or give further delay. Such acts could be set up as a defence in the suit. Ibid, § 326.

The clause in the mortgage upon which the question arises relative to the payment of 10 per cent. for attorney's fees for collection, was not read to or by Mrs. Quirk, and as she testifies was not known to her. As a material fact it should have been brought to her attention ; and being a *surety* for her husband, who got the money, she cannot now be held liable for its payment under the authorities just cited.

3d. Whether the coverture be not a bar to the recovery of money upon such a contract.

The power of married women to make contracts is limited by the act of assembly, or more properly speaking, is extended by statute. At law they have no capacity to do any act or to enter into any contracts, and such acts and contracts are treated as mere nullities. Story's Eq., § 243.

She may agree that a writ of scire facias may immediately issue upon default of payment of money due on a mortgage, because, if she can convey upon conditions, she may prescribe terms. Black *v.* Galway 12 H. 18.

A married woman may prescribe terms and waive privileges as long as her acts are essentially a part of the contract of sale, and binds nothing but the property sold. Hence a judgment for the purchase money is not void on ground of coverture. Palluson *v.* Robinson 1 Casey 81.

In Glass *v.* Warwick 4 Wright 140, a married woman bought property in her own name and gave her own bond and mortgage for the balance of the purchase money, which contained a condition that upon default of payment of interest for six months after it was due, the whole should become due and payable, it was held that the principal could be collected by suit. But the court also say "that in strict law a married woman has no power to make such contracts except with her husband and *it is only by way of equity they are enforced to prevent great injustice.*"

She cannot convey her real estate without joining with her husband in the deed. Peck *v.* Ward 6 Harris 506.

She cannot release her dower except in the manner prescribed by act of 24 February, 1770. Ulp *v.* Campbell 7 H. 361.

She cannot legally give bond and warrant of attorney to confess judgment with her husband. Caldwell *v.* Walters 6 H. 79 ; Keiper *v.* Helfricker 6 Wr. 325, 7 Wr. 63. Such bond and warranty is absolutely void. Dorrance *v.* Scott 3 Wh. 313.

She cannot enter into a recognizance as bail for her husband. Bennet *v.* Smith 3 Am. L. J. 138. She cannot give a valid power of attorney to transfer certificates of city loans. Keen *v.* Phila. 28 Legal Intelligencer 116.

"She cannot execute a bond even for necessaries." Glyde *v.* Keester, 8 Casey 85.

"The confession of a married woman by bond and warrant of attorney is absolutely void." Graham *v.* Long 15 P. F. S 383.

"*At law femes covert have no capacity to make contracts, their contracts are nullities.*" Gledden *v.* Strupler 2 P. F. S. 400.

Judge Agnew in an able and exhaustive opinion in the last mentioned case has collected the leading authorities on the subject, "*a long bead roll of cases,*" as Sharswood, J. appropriately says in Graham *v.* Long 15 P. F. S. 386. (See also Swayne *v.* Lyon 17 P. F. S. 436 ; Finley's Appeal 17 P. F. S. 458).

The clause in this mortgage allowing ten per cent. attorney fees for collection *is a contract in itself.* If it was unconnected with the instrument it would admit of no doubt. Embodied in it, it does not make it less a contract. The money was not for necessaries, or for improvements to her separate estate. 8 C. 432. But the contract was of such a nature which is beyond the power of a married woman to execute. *Rule made absolute.*

*A. W. Schalck,* Esq. for plaintiff; *J. W. Roseberry,* Esq. for defendant.