# Hooper *v.* Savannah & Memphis Railroad Company.

*Bill in Equity against Railroad Company to Enforce Vendor's Lien on Right of Way.*

1. *Motion to dismiss bill for want of equity; when should be overruled.*—Under the rules of practice governing courts of chancery in this State, a motion to dismiss a bill for want of equity should only prevail when, admitting all the facts apparent on the face of the bill, whether well or illy pleaded, the complainant can have no relief. If it is apparent, upon a proper statement of the facts, and appropriate prayer, equitable relief may be obtained, the motion should be overruled, and the respondent put to his demurrer, or leave should be granted to the complainant to amend, so as to obviate the defects in the bill.

2. *Private property condemned for public uses; what is just compensation.*—Just compensation, under the constitution, to the owner of a city lot, for a part of the lot taken and applied to the use of a railroad company, includes not only the value of the part of the lot so taken and applied, but also the injury resulting therefrom to the remaining parts of the lot; and if the ways of access to, and egress from, the lot are obstructed or interrupted thereby, such obstruction or interruption forms a part of the injury, for which the owner is entitled to compensation.

3. *When a fixed sum to be paid on breach of contract, a penalty and not liquidated damages.*—Where a railroad company, having constructed its road-bed through a city lot, instead of proceeding under the statute, entered into a written contract with the owner, thereby acquiring a right of way over the lot, in consideration of a given amount in money, and of an agreement on its part, that it would do certain work on specified streets leading to, or around the lot, where they were intersected by the railroad, within a time prescribed by the contract,—a stipulation in such contract, that for any failure on the part of the company, after the time within which it agreed to do the work, it would pay the owner one dollar per day for each day it was in default, will be construed to have been intended by the parties as a penalty, and not as liquidated damages; and on a breach of the stipulation the owner would be entitled to recover the actual loss or injury sustained by him therefrom, which is the diminution of the value of the lot resulting from the obstruction or interruption by the railroad of the streets on which the work was to be done.

4. *Damages for breach of contract; when a court of equity will decree.*—As a general proposition, courts of equity will not entertain suits, the sole object of which is compensation for breaches of contract; but when the court has acquired jurisdiction, as incidental to other relief, or if a peculiar equity intervenes, such compensation may be decreed.

5. *Relation of vendor and vendee; special contract construed as cre-*

34

[Hooper v. Savannah & Memphis·R. R. Co.]

*ating; specific performance of contract.*—Where a railroad company, hav-ing constructed its road-bed through a city lot, without having first made just compensation therefor, entered into a written contract with the owner, by which the company stipulated to pay him a stated amount in cash, and further, to do and perform certain work on specified streets contigu-ous to the lot and necessary to access to, and egress from it, where they were intersected by the railroad, within a given time, and under a pre-scribed penalty; and in *return* the owner was to *give* the company the right to run their road through the lot on the bed as graded, with a right ·of way to the extent of twenty-five feet from the center of the road-bed, and also the right of the use of another designated part of the lot, the ·owner retaining the legal title; and the company, having made the cash payment, failed to do the stipulated work on the streets,—*held,*

(*a*). That the contract being construed in view of the relation of the parties and of their rights and liabilities—a land-owner whose property was liable to be taken for public uses, and a corporation having authority to take and acquire it for such uses—the payment to the owner of the compensation he was entitled to receive, partly in money, and partly by the performance of the stipulated work on the streets, where intersected by the railroad, obstructing access to the lot and impairing its value, was the purpose intended to be accomplished by the parties.

(*b*). That, under the contract, the relation of the parties, is that of ven-dor and vendee, the vendor having a lien on the rights in the lot acquired by the vendee, for the unpaid balance of the consideration therefor, which is the diminished value of the lot caused by the obstruction or in-terruption of access to it by the railroad intersecting the streets; and that .a court of equity has jurisdiction to enforce this lien.

(*c*). That a court of equity also has jurisdiction to enforce the specific performance of the contract, and, as incidental thereto, to decree com-pensation for any damages suffered by the owner from the failure of the ·company to do the work stipulated.

(*d*). That the legal title not having passed by the contract, but having been retained by the vendor, the company's title was, at most, merely equitable; and a mortgagee of the company, being chargeable with no-tice of the nature and character of the right, title and possession of the company, can not be regarded as a *bona fide* purchaser for a valuable consideration, without notice; but he only succeeds to the equitable right or title of the company and takes it *cum onere.*

APPEAL from Lee Chancery Court.

Heard before Hon. N. S. GRAHAM.

The bill in this cause was filed on the 7th of April, 1880, by George W. and George D. Hooper, against the Savannah and Memphis Railroad Company, a corporation owning and operat-ing a railroad in this State, and others claiming under a mort-gage executed by the company "a few days before the date" of .the agreement, upon which this suit is founded. The case made by the record is substantially stated in the opinion. It will not, however, be amiss to set out, in the language of the agreement, the work which the railroad company agreed to do and perform on certain streets therein mentioned, as it is upon the failure of the company to do and perform that work, this suit is founded. The language is as follows: "The said railroad company to fill, level or grade every street which leads to or around Block A, where George D. Hooper resides, which is cut by said railroad,

VOL. LXIX.

[Hooper v. Savannah & Memphis R. R. Co.]

in such a manner, and to such an extent, as to make the crossing of said railroad by each of said streets as ample and as convenient, as it is possible to make them consistently with the running and use of said railroad, and this grading, filling up and leveling to extend to the width of twenty feet, and to be always kept up by said company; provided, however, that a bridge, if deemed advisable by both parties, may be built by the company across the railroad on Washington street."

SAM'L F. RICE, and G. D. & G. W. HOOPER, for appellants. (1). The amount agreed by the railroad company to. be paid per. day on its default to do the stipulated work, was not unreasonable, and it is the measure of damages.--Abbott on Shipping, title Demurrage, p. 383, and cases cited; *Pettis v. Bloomer*, 21 How. Pr. Rep. 317. (2). It is obvious from the contract, that the agreement to either grade the streets and make crossings, or in lieu thereof, to pay one dollar per day, was a part of the consideration given for the land, for the enforcement of which the appellants had a vendor's lien.— *Walker v. W. H. & B. R. Co.*, 1 Eq. Cases, p. 195; *Cosens v. Bognor Railw. Co.*, 1 Ch. Ap. Cases, 594; *Walker v. E. C. Rw. Co.*, 12 Jurist, Pt. 1, 787; *Earl St. Germans v. C. P. Rw. Co.*, 11 Eq. Cases, 568; *Bishop of Winchester v. M. R. R. Co.*, 5 Eq. Cases, 17; *Munns v. Isle of Wight R. R. Co.*, 8 Eq. Cases, 653; S. C., 5 Ch. Ap. Cases, 414; 2 Story's Eq. Jur. (12 Ed.) §§ 1231, 1566-7; Redfield on Law of Railroads, 257; *Phillips v. Thompson*, 1 Johns. Ch. 131. (3). A court of equity has jurisdiction to enforce specific performance of the contract.—*Lytton v. G. N. Rw. Co.*, 2 Kay & J. 394; 2 Story Eq. Jur. § 1567; *Sanderson v. C. & W. Rw. Co.*, 11 Beavan, 497. (4). A vendor's lien can not be considered a stale demand, if bill to enforce it is filed within twenty years. *Relfe, v. Relfe*, 34 Ala. 500. (5). If the bill was susceptible of amendment, it should not have been dismissed in vacation. *Bishop v. Wood*, 59 Ala. 253.

W. H. BARNES, *contra.*—The bill is filed to attempt to enforce an alleged lien for breach of covenants on the part of the company, as shown in the agreement set forth in the bill. This can not be done.—*McCandlish v. Keen*, 13 Grat. 615; *Arlin v. Brown*, 44 N. H. 102; *Brawley v. Cairon*, 8 Leigh, 528; *McKillop v. McKillop*, 8 Bar. 552; *James v. Bird*, 8 Leigh, p. 510.

BRICKELL, C. J.—The original bill filed by the appellants states, in substance, that they are, and were the owners of three parcels of lands situate in the city of Opelika, known and designated as lots 2, 3 and 4 in block A. These lots formed one

"*compact settlement,*" on which was the residence of the appellant, George D.    They are bounded by three of the streets of the city, known as Washington street, North Railroad street and Coosa street, and separated from Wilcox street by lot 1 of said block. On and before the 6th day of September, 1870, the Savannah & Memphis Railroad Company had constructed its road-bed through lot numbered 4, and through a small corner of lot 3.    On that day the railroad company and the appellants entered into an agreement in writing, a copy of which is exhibited, by which the company stipulated to pay the appellants in cash three hundred and seventy-five dollars, and also stipulated *to do certain* work upon the streets aforesaid where they were intersected by its road.    In *return*, the appellants were to *give* the company the right to run their road through said block on the bed as graded, and the use of all of lot 4 on the north side of the road, and the right of way to the extent of twenty-five feet from the centre of the road-bed.    The company stipulated to do and perform all of the work on the streets on or before the first day of June, 1871.    For any failure after that time, they stipulated to pay the appellants one dollar per day, for each day they were in default.    Each party stipulated, on the request of the other, to execute any other or further deeds or instruments necessary to give effect to their intentions and purposes.

The company made payment of said sum of three hundred and seventy-five dollars, entered into possession of the parts of the lots on which the road-bed was constructed, and of the twenty-five feet from the centre of the bed, and of the part of lot number 4 north of the road, and have since had undisturbed occupancy.    They have failed and neglected to do the work stipulated on Coosa street, or on North Railroad street, and in consequence said streets are useless as ways to and from lots 2 and 3, and the part of lot 4 reserved by the appellants.    And they have also failed to provide, on Wilcox street, the crossing agreed to be provided.    They have failed and neglected to pay or tender to the appellants "the amount stipulated in said agreement as liquidated damages for its default in relation to the crossings or any part thereof, or any compensation in any shape whatever."

It is alleged the agreement of the company to do the stipulated work on the said streets, or failing therein, to pay certain damages, was a part of the consideration of the purchase of the right to, and use of the lands of which it has possession under said agreement.    The insolvency of the company is averred, and its execution of a mortgage conveying all its property, for the foreclosure of which proceedings were pending in the Court of Chancery.

The prayer of the bill is, that a decree be rendered for the payment to the appellants of the sum of one dollar per day for

[Hooper v. Savannah & Memphis R. R. Co.]

the period the company has been in default in the performance of the said work; that a lien for the payment thereof be decreed on the lands it acquired under said agreement; and that the company and its assignees be compelled to do and maintain said work, and the agreement declared a perpetual lien for compelling them to do and maintain the same, and for general relief.

The hearing in the Court of Chancery was had on motion to dismiss the bill for want of equity, no demurrer or answer having been filed. The chancellor was of opinion, that the bill could not be regarded as the bill of a vendor claiming a lien for 'the purchase-money; that it was a bill for the recovery of stipulated damages, stating no fact rendering necessary the interference of a court of equity, and could not be entertained. Therefore, the motion was sustained and the bill dismissed.

It is not an uncommon error to suppose that, under the principles and rules governing our courts of chancery, a motion to dismiss a bill for want of equity, and a demurrer are equivalents—that any and every objection which would be available on demurrer, is equally available as the ground of a motion to dismiss. The motion to dismiss has its authority in the 76th Rule of Chancery Practice, which reads: "A defendant may, at any stage of the cause, move to dismiss a bill for want of equity, unless a similar motion has been previously made and determined. If the cause is ready for hearing on bill and answer, or pleadings and proof, such motion may be made and heard in connection with the final hearing." Like the general demurrer which was usual in our practice prior to the Code, a motion to dismiss a bill for want of equity directs attention wholly and exclusively to the equities of the bill, not to its frame, or the want or misjoinder of parties, or other matter, which, if a demurrer were interposed, would be regarded as waived, if not specially assigned. The present bill may be open to criticism, there may be defects in its frame, and omissions of proper averments adapting it to the particular relief to which the complainants may be entitled. These defects, if made the cause of demurrer, are curable by amendment, but do not form proper matter of a motion to dismiss for want of equity. That motion should prevail only, when admitting all the facts apparent on the face of the bill, whether well or illy pleaded, the complainant can have no relief whatever. If it is apparent, upon a proper statement of the facts and an appropriate prayer, equitable relief may be obtained, the motion should be overruled, the respondent put to his demurrer, or leave granted the complainant to amend, obviating the defects in the bill. Such is the course of practice in Tennessee under a statute similar in terms to our

rule of practice.—*Thompson v. Paul*, 8 Humph. 114; *Quinn v. Leake*, 1 Tenn. Ch. 67; *Randall v. Payne, Ib.* 137.

The important, controlling question is, whether, under the facts stated in the bill, a case of equitable cognizance can be presented, when these facts are properly pleaded. The just construction of the contract into which the parties entered, their objects and purposes, must be ascertained. In ascertaining the construction, regard must be had to the legal relation and condition of the parties, and their rights and liabilities when they entered into the contract. The appellants were the owners of a parcel of land, which, though designated as separate or distinct lots in the plan of the city, and by the designation were capable of distinct conveyance, and of separate ownership, yet in fact adjoined, and were used and occupied as an entirety; as forming and constituting, in the language of the bill, *one compact settlement*, the residence of one of the appellants. The taking of a part of the lots for the uses of the railroad, was the taking of private property for public uses, and, under the constitution, in the absence of a contract or agreement with the owner, could be legalized only by the payment to them of just compensation at the time of the taking. Just compensation included not only the value of the parts of the lots actually taken and appropriated to the use of the company, but the injury to the remaining lots or parts of lots, and if the ways of ingress to, and egress from the lots were obstructed or interrupted, such obstruction or interruption formed a part of the injury, for which compensation should have been made. The general rule of damages in such cases is the fair market value of the land actually taken, and the diminution in the market value of the land not taken, because of the uses to which the part taken is appropriated. In other words, the difference between the market value of the whole lots as they were at the time of the taking, and the market value of the lots and parts of lots remaining to the appellants after such taking, was the measure of just compensation to which they were entitled.—Pierce on Railroads, 210; Cooley Con. Lim. 708, (4th Ed.) It is apparent that the contract was entered into in view of the relation of the parties, and of their rights and liabilities in that relation—a land-owner whose property was to be taken for public use, and a corporation having authority for such uses to take and acquire it. The payment to the appellants of the compensation they were entitled to receive, partly in money, and partly by the performance and maintenance of the work on the streets, where intersected by the railroad, obstructing access to the lots, impairing their value, was the purpose the parties had in view. Time was given the company, a period of nearly nine months, for the performance of the work, and in the event it was in de-

fault at the expiration of the period, it stipulated to pay the appellants one dollar for each day the default continued.

It is certainly competent for parties entering into a contract, to avoid all future contention as to the amount of damages which may result from its breach, to agree and fix upon a certain, definite sum, as that which shall be paid to the party injured by the party in default in performance of the contract. Damages so ascertained are termed indifferently *liquidated,* or *stated,* or *stipulated* damages. Though the parties may agree, and may express precisely their agreement, declaring the sum to be paid in event the contract is broken, and denominate it as *fixed,* or *stated,* or *liquidated* damages, a perplexing question often arises, whether the intention was to afford fair and reasonable compensation for the injury resulting from the breach, simply and merely, or whether, by way of quickening diligence in punctual performance, a penalty or a forfeiture was intended, which must be suffered without regard to the actual injury resulting from the failure to keep the contract. In the determination of this question, as in the determination of all other questions touching the construction of contracts, the governing guides are the subject of the contract, and the intention of the parties. Considering this particular question, said Chief Justice COLLIER, in *Watts v. Sheppard,* 2 Ala. 434, "the first general principle in the construction of all contracts is, that they shall be so expounded, as to carry into effect the intention of the parties. To this end, the court should, if necessary, look to the subject-matter of the contract, the situation of the parties, the motives that led to it, and the objects intended to be attained by it." Among principles well established in determining whether a stipulation or covenant of the character now under consideration is in its nature a penalty or liquidated damages, the first is, that it is the tendency and preference of the law, to regard the stipulation or covenant as of the nature of a penalty, rather than as liquidated damages, because then it may be apportioned to the loss actually sustained; and compensation for that loss is the full measure of justice and right.—*Shute v. Taylor,* 5 Metc. 61; *Fisk v. Gray,* 11 Allen, 132; *Wallis v. Carpenter,* 13 Allen, 19; *Bagley v. Peddie,* 5 Sandf. (Sup. Ct.) 192; *Baird v. Tolliver,* 6 Humph. 186. And if it be doubtful, upon a just consideration of all the terms and purposes of the contract, of the relation of the parties, of their objects and purposes, and of the duty to be performed, whether the sum stated was intended as liquidated damages, or as a penalty, as the latter it will be construed. *Shadduck v. Marsh,* 1 Zab. (N. J. Law), 434; *Whitfield v. Levy,* 6 Vroom (N. J. Law), 149; *Tayloe v. Sandiford,* 7 Wheat. 13; *Bagley v. Peddie, supra.* And where the agree-

ment or covenant is for the performance of several things, and the stipulation is for the payment of a sum in gross in the event of a failure to perform, in whole or in part, the sum stated will be considered as a penalty.— *Watts v. Sheppard*, 2 Ala. 425; *Bagley v. Peddie, supra; Shadduck v. Marsh, supra; Owens v. Hodges*, 1 McMullen (Law), 106; *Basye v. Ambrose*, 28 Mo. 39; *Curry v. Larer*, 7 Penn. St. 470.

This stipulation is for work to be done at the intersection by the railroad of four several streets, leading to or around the lots of appellants. The object in view was repairing the injury done to the lots by the obstruction or interruption of access to and from them, through and by these streets; in this respect, to place the lots as far as practicable in the condition they were when the railroad was constructed. It is scarcely possible that the work to be done on the crossings of each street, involved the same labor and expense, or that the injury resulting to the appellants from the obstruction or interruption of each crossing, was the same in degree; yet, the stipulation is for the payment of the same sum for each day's default in the performance of any part of the work, as for a default in entire performance. Any breach of the stipulation, great or small, without regard to the consequent injury to the appellants, makes a default for which the amount to be paid is precisely that which must be paid for an entire non-performance. This is manifestly unreasonable, and it is not improbable may be unconscionable to either party—in one event, exceeding the actual injury the appellants may sustain, and in another, not equaling, but falling below it. When the whole contract is considered, the relation of the parties, and the objects, it is apparent, they had in view, it seems plain enough that the parties could not have intended that the sum mentioned should be taken as liquidated damages. It is, to say the least, doubtful what was their intention, and there is less danger of oppression and injustice from regarding it as a penalty than from treating it as a covenant to pay liquidated damages.

The diminution of the value of the lots of the appellants because of the obstruction or interruption of the public ways or streets leading to them, is, as we have seen, an element of the just compensation which must be made to them, because of the taking and appropriation of parts of the lots to the uses of the railroad company. This diminution of value is the real loss sustained, the injury the stipulation of the contract was intended to repair, and for the loss and injury the appellants are entitled to a recovery. As a general proposition courts of equity do not entertain suits, the sole object of which is compensation for breaches of contracts, or the recovery of damages for wrongs cognizable at law, because in courts of law, for such

grievances, there are plain, complete, and adequate remedies. But when the court has jurisdiction, as incidental to other relief, or if a peculiar equity intervenes, compensation or damages may be decreed.—2 Story's Eq. § 794. If the parties had not agreed —if the company had not entered upon and acquired possession of the lands taken, with the consent of the appellants, without the prepayment of the damages resulting from the obstruction of access to the lots, and all other damages forming the just compensation which must be made, before private property can be taken and appropriated to public uses, a court of equity would have intervened and restrained by injunction the entry upon and possession of the land by the company.—*Bonaparte v. Camden and Amboy R. R. Co.*, 1 Baldwin, 205 ; *Jersey City & Bergen R. R. Co. v. Jersey City & Hoboken R. R. Co.*, 20 N. J. Eq. 61 ; *Stacy v. Vermont Central R. R. Co.*, 39 Vt. 14. Entering upon the lands, acquiring possession by contract with the appellants, the relation of the parties is that of seller and purchaser. If the company had stipulated to pay, and the appellants had agreed to accept a specific sum of money, as just compensation for the lands taken, that sum would, of necessity, have embraced all compensation the appellants could have claimed for the interruption or obstruction of the high-ways leading to and from these lots, or because of the diminished value of the lots from any cause, in the appropriation of parts of them to the uses of the company. That sum would have been as essentially the purchase-money of lands, or of a right and interest in and to lands, as when between natural persons. there is a bargain and sale for a specified price. What difference is there in right and principle, when a specific sum is promised and paid as partial compensation, and there is a promise to repair an injury by work and labor, which lessened the value of the remaining lands of the owner, for which he is entitled to compensation? If the injury is not repaired, the owner suffers loss, and the company gets the land without making the compensation justly due, without paying the consideration upon which it was let into possession. The real foundation of the lien of a vendor for the purchase-money of lands, is that it is against good conscience for one man to get and keep the lands of another, without paying the consideration promised to be paid for them. For the performance of the contract by the company, in all its parts, it is evident the appellants relied, and the company intended they should rely, on the lands taken as a security. The retention of the legal title is very strong, if it is not conclusive evidence of this reliance. The terms of the contract are conclusive—it is only *in return* for the performance by the company of the contract, that the appellants promise *to give* the company "*the right to run their road*

*through said Block, on the road-bed, as at present graded, and
to the use of all of lot number four, on the north side of said
railroad tract, and the right of way on lot number four to the
extent of twenty-five feet from the centre of said railroad
tract."* The vendor of lands who conveys the legal title, not tak-
ing some other security than the promise of the vendee to pay,
retains a lien for the purchase-money, and the presumption that
it is retained, must be repelled by clear and convincing evidence
of an agreement or intention to the contrary. The vendor who
retains the legal title, and stipulates to convey it only on full
payment of the purchase-money, holds it as a security for the
purchase-money, which is of equal dignity with a mortgage.

Courts of equity often intervene to compel railroad corpora-
tions to the specific performance of contracts they make with
land-owners.—2 Story's Equity, § 1566. In *Cosens v. Bognor
Railway Co.*, Law Rep., 1 Ch. App. 594 (cited, 1 Redf. on Rail-
ways, 5th Ed. 256), a court of equity enforced the payment of
damages assessed to the land-owner against a railway company,
entering and constructing its road without making payment of
them, by injunction restraining the use of the land until pay-
ment was made. In *Walker v. Ware, Hadham & Buntingford
R. R. Co.*, 1 Law Rep , Eq. Cases, 195, under an assessment of
compensation, and by agreement with the land-owner, the rail-
road company entered into possession, promising payment of
the compensation assessed, and to pay such damages as a par-
ticular individual should award the owner for the injury he
sustained by reason of the severance of the lands, or because
of injury to his remaining lands. The Master of the Rolls,
Sir. J. ROMILLY, held, that the land-owner had a lien not only
for the purchase-money of the lands which had been assessed
as compensation, but for the damages resulting from the sever-
ance of the lands, and the injury to his remaining lands; and
that, although the road had been constructed and opened for
public uses, the lien would be enforced by a sale of the land.

There are authorities in this country recognizing the exis-
tence of a lien akin to that of a vendor's lien, in favor of the land-
owner letting a railroad company into possession, upon condi-
tions it fails or refuses to perform. Many of them are col-
lated and referred to in Pierce on Railroads, 169, n. 5. In
*Dayton R. R. Co. v. Lewton*, 20 Ohio St. 401, the land-owner
agreed "to release the right of way, and the right to enter up-
on and construct its railroad" through his lands. In considera-
tion thereof the company agreed to pay a certain sum of money
at a future day, and to construct certain road-crossings and cat-
tle-guards. Without receiving a deed to the right of way or
any conveyance of it, before paying the money, and before
constructing the crossings or guards, the company entered into

possession and constructed its road. The court were of opinion the land-owner was entitled, at his election, to a specific performance of the contract, or to enforce a lien upon the lands, not only for the unpaid purchase-money, but also for the damages resulting from the failure to construct the road-crossings and the cattle-guards.

The only claim of the railroad company to the lands taken from the appellants, and appropriated to its uses, is derived from the contract, into which the parties entered. That contract did not pass a legal title; on the contrary, the legal title was retained by the appellants as a security for the performance by the company of the stipulations it agreed to perform, as the consideration for the lands. Its title was, at most, merely equitable, and its mortgagees can not be regarded as *bona fide* purchasers for a valuable consideration, without notice. To the equitable right or title of the company these mortgagees succeeded, and they take it *cum onere*. They are chargeable with notice of the nature and character of the right and title and possession of the railroad company.—*Gillison v. S. & C. R. R. Co.*, 7 S. C. (Law), 173.

Whether the appellants shall proceed to enforce specific performance of the contract, claiming compensation for any damages suffered from the failure of the company to do the work stipulated; or shall seek to enforce a lien for the diminished value of the lots because of the obstruction or interruption of access to them, there must be an amendment of the bill. Whether the right to specific performance has been lost or not, by the delay in claiming it, is a question which must be left open for consideration, if the bill is so amended as to claim it. In the present aspect of the case, it is enough to say, the bill is not devoid of equity, though its gravamen may be defectively stated; and the motion to dismiss should not have been allowed.

The decree of the chancellor must be reversed, the motion to dismiss the bill for want of equity overruled, and the cause remanded.