# Rucker *et al. v.* Morgan.

*Bill in Equity to declare a Contract void for Fraud and enjoin Suit thereon.*

1. *Equity pleading and practice; effect of dismissal as to necessary parties defendant.*—Where, after the dismissal of a bill in equity as to certain defendants, who, under the averments, are shown to be necessary parties, but against whom no jurisdiction had been acquired, the averments and charges in the bill and prayer for relief remaining unchanged, the bill stands, as to any further proceedings thereon, as if such defendants had not been made parties in the first instance.

2. *Corporate stocks in trust; injunction of suit for same; bill without equity.*—Where two parties, owning shares of stock in a corporation, put them in trust under an agreement by which they are to be delivered by the trustee to a third person on the joint request of the two owners, if upon the refusal of the trustee to deliver such stock to the third person without the required joint request, the said third person threatens or brings suit at law against said trustee to recover such stock, neither of the parties to the agreement can maintain a bill to enjoin the prosecution of such suit; since their defense to said suit at law is complete and adequate.

3. *Equity pleading; motion to dismiss for want of equity; when proper.*—When it is apparent from the face of a bill in chancery that it contains no equity, a motion to dismiss for the want of equity will be proper to raise the question.

APPEAL from the Circuit Court of Jefferson.
Heard before the Hon. JAMES J. BANKS.
This was a bill in equity filed by J. LaMotte Morgan, the appellee, against Edmund W. Rucker and Thomas Seddon, who are alleged to be resident citizens of Birmingham, Alabama, E. A. Uehling, who is alleged to be a resident of the city of Newark, in the State of New Jersey, James W. Miller and William H. Dryenforth, who are alleged to be resident citizens of the city of Chicago, in the State of Illinois, and the Fortimolite Metal Company, which is alleged to be "a body corporate duly or-

ganized under the laws of the State of Illinois," having its principal place of business in said city of Chicago.

The case made by the bill is substantially as follows: The complainant, in association with the defendant Miller, was in the month of April, 1894, and for some time thereafter, engaged for and in behalf of the said Fortimolite Metal Company in negotiating a contract, whereby said company might grant to iron manufacturers the use of a certain process for treating iron, which said process was secured to, owned and held by said Metal Company under appropriate letters patent; that said Fortimolite Metal Company had promised and agreed to and with complainant and his associate Miller that it would, upon their obtaining for it such contract, in payment for their services in that regard, issue and deliver to them, in equal amounts, three thousand shares of the capital stock of said company; that at the time this contract was made, complainant "supposed and believed him (Miller) to be a man of good habits, character and reputation, and dealt with him as such;" that, as a result of their negotiations, on the 5th September, 1894, an agreement in writing was entered into by and between the said company, represented by its general manager, one T. P. Moody, and the Sloss Iron and Steel Company, represented by its vice-president, the defendant Rucker, for the use by the Sloss Company of the said patented process of treating iron; and subsequently this contract was merged in a more formal, definite and specific contract, which was executed for and in behalf of the Sloss Company, by its president, the defendant Seddon, by authority of its board of directors, and for and in behalf of the Metal Company by said Moody, as its general manager, his act being afterwards ratified by its board of directors; and that thereupon the Metal Company did, in performance of its contract with them, the complainant and Miller, and in payment for their services rendered in that regard, issue and deliver to each of them fifteen hundred shares of the capital stock of said company.

It is further averred that complainant was absent from the State of Alabama, where the said negotiations were in progress, from about the 28th day of Apirl, 1894,

up to about the 12th day of November, 1894; that on or about 20th day of October, 1894, he met his said associate Miller in the city of Chicago, and that at various times and interviews had with him between the 20th and 22d days of October, Miller represented and stated and endeavored to impress upon the complainant as a fact that in the progress of the negotiations in Alabama, and to the consummation of the contract hereinabove set forth, he had derived and received great assistance from three persons whose names he had first declined to make known, but subsequently, when pressed thereto, he stated that they were the defendants Rucker, Seddon and Uehling, and that he, the said Miller, had promised to the said three persons for their assistance rendered to him in the securing of said contract with the Sloss Company 1100 shares of said Metal Company's stock, and agreed to deliver to them 550 shares out of his said 1500 shares, and had agreed that complainant should deliver 550 shares out of his 1500 shares received as above stated; the said shares to be distributed 500 to the said Rucker, 500 to the said Seddon, and 100 to the said Uehling. That Miller then further represented to complainant that Rucker, Seddon and Uehling were men of great influence in Birmingham, and that their assistance had been great and essential in carrying on the negotiations and securing the contract with the Sloss Company; and in that connection Miller further represented and urged as an inducement to the entering into the trust hereinafter mentioned that Uehling had promised to turn over to complainant and Miller, in consideration for said Metal Company's stock to be delivered to him, certain patents which Uehling then had and held or had applied for, and further that he, Miller, had reserved the right for himself and complainant to retain the said 1100 shares of stock upon paying, on the 15th day of April, 1895, to Rucker, Seddon and Uehling ten per centum of the par value thereof; that Miller also stated and represented, in this connection, to complainant that it was essential to the successful carrying on of future plans that the names of Rucker, Seddon and Uehling should not be disclosed,

and he urged that the stock so promised, as stated by him, should be issued to him and in his name; that complainant at that time had confidence in the said Miller and believed said representations to be true, but inasmuch as he had not made the promise himself, but being willing to carry out in good faith any engagements made for him by his associate with the persons named, they being known to complainant as men of influence and standing, complainant then and there, to-wit, on the 22d day of October, 1894, entered into the following arrangement and agreement with Miller, induced thereto solely by the representations made to him by Miller, namely: "That the said 1100 shares of stock should be issued to and in the name of the said James W. Miller, agent, in three certificates, two for 500 shares, each numbered 104 and 105, and one for 100 shares, numbered 106, and the same deposited with the defendant William H. Dryenforth, as trustee; and thereupon a certain instrument in writing, evidencing such agreement, was entered into between your orator and said Miller and accepted by the said Dryenforth in words and figures as follows, to-wit:

'Chicago, October 22nd, 1894.

'W. H. Dryenforth, Esqr., President:

'My Dear Sir:—This letter will place in your hands as trustee (3) three certificates of the capital stock of the Fortimolite Metal Co., (2) two for (500) five hundred shares each, certificates Nos. 104 and 105, and certificate No. 106 for (100) one hundred shares, aggregating (1100) eleven hundred shares, all in the name of James W. Miller, Agt. During recent negotiations in Alabama with a view to securing a contract for the use of the Fortimolite process, this stock (1100 shares) was promised to three parties. We were to hold the same until April 15th, 1895, at the end of that time we engaged to pay said parties, each separately (10 %) ten per centum of the par value of said stock in cash, or to deliver, to each separately the above (3) three certificates. This transaction will be consummated by the joint written request of ourselves, our heirs, executors, adminis-

trators or assigns, until which time you will hold these papers in trust.                    Very truly yours,

                    (Signed)  Jas. W. Miller,

                    (Signed)  J. LaMotte Morgan.

'I accept above trust.

                    (Signed)  W. H. Dryenforth.' "

It is further averred in the bill that complainant had not personally promised to the defendants, Rucker, Seddon and Uehling, or either of them, any of said stock or other consideration prior to the 22d day of October, 1894, nor since that date has he made to them or either of them any such promise; that he had not authorized Miller to make any such promise or agreement for him; that all the knowledge or information he had upon that subject prior to October 22d, was derived solely from the statements and representations made to him by Miller, as hereinabove set forth, and knew nothing to the contrary thereto until after his return to Birmingham, Alabama, about November 12th, 1894; that he then had a personal interview with each of said defendants, Rucker, Seddon and Uehling, at which interviews each of them expressly disavowed any such agreement with Miller, and each denied to complainant that Miller had ever made to them or either of them any promise of a stock bonus in connection with the contract negotiated with the Sloss Company. Then follows an averment denying that Miller ever had such a contract as above alleged with Rucker, Seddon and Uehling, or either of them, or any agreement about the stock, and that the statements made by Miller to induce complainant to enter into the writing just set out above were false and fraudulent; and that said escrow or trust contract, so induced by fraud, was fraudulent and void, and not binding on complainant.

It is further averred that complainant never, directly or indirectly, either separately or jointly with Miller made any request of the trustee Dryenforth for the execution of the trust created by the instrument hereinabove copied, but, on the contrary, has, at all times since about the 29th of November, 1894, so soon as he learned the facts in regard thereto, as he states them in the bill,

expressly and emphatically repudiated the said trust and contract and has notified the said trustee of the said repudiation thereof and demanded of him the return to him of the stock so placed in his hands as trustee. It is further averred in the bill that neither Rucker nor Seddon nor Uehling knew anything about the execution of the said contract of trust until long after its execution, and, so far as complainant is informed and believes, neither of them ever asserted any claim thereto or to any part of the said stock so placed in trust until some time about November 30th, 1894; that their first information in regard thereto was, as complainant is informed and believes, derived from the said Miller or the said trustee Dryenforth some time about the 30th day of November, 1894; and it is charged that any claim now made by them or either of them to said stock, or to any portion thereof is not based upon any contract, understanding or agreement made betwen them and said Miller prior to the 22d day of October, 1894, or any promise made to them or either of them by the said Miller prior to the 12th day of October, 1894, but that, on the contrary, "the same is a subsequently devised scheme on the part of the said Miller, in association with the said defendants Rucker and Dryenforth, to carry into execution the original fraud devised by said Miller to secure from your orator his said stock, and your orator charges that any claim now made to the said stock of your orator is but a conspiracy between the said defendants Miller and Dryenforth in and through the instrumentality of the said defendant Rucker to secure your orator's said stock without consideration for their mutual benefit, or .for the benefit of themselves or other persons associated with them, who are unknown to your orator."

It is further averred in the bill that the shares of stock now in possession of the defendant Dryenforth, held by him under the terms and conditions of the said escrow paper hereinabove set forth, have no present fixed or ascertainable market value; that there has not been at present any fixed ascertainable value of any kind; that their value varies from day to day and is largely speculative in its character, depending largely upon the opera-

tions of the Sloss Iron and Steel Company under their said contract and upon the profits to be made under the same or the ability of said company to enter into still other contracts; that in any suit at law it would be difficult, and, as complainant believes, impossible to establish by proof a fair and full equivalent of value for said stock; and that on or about the 29th of November, 1894, and as soon as complainant could see the defendants Miller and Dryenforth, he demanded of them a return to him of the said 550 shares of stock in the hands of said Dryenforth, with which demand they and each of them refused and do still refuse to comply. It is further averred in the bill that the defendant Miller has no property or estate whatsoever liable to execution at law except the interest he has in the stock of the said Fortimolite Company, and that complainant has no adequate remedy at law in the premises; that he will suffer great and irreparable loss and injury unless Miller be temporarily and, upon final hearing, perpetually enjoined from in any manner disposing of or transferring said shares of stock in the hands of Dryenforth as trustee, and the said Fortimolite Metal Company also be so enjoined from transferring upon its books the said stock to any person other than the complainant.

It is further averred in the bill, upon information and belief, that on or about the 15th of April, 1895, the defendants, Rucker, Seddon and Uehling, demanded of the defendant Dryenforth, as trustee, the said 1100 shares of Fortimolite Metal Company stock, covered by the said escrow contract of October 22d, 1894, and have threatened to bring suit for the same, and, in the belief of complainant, they will do so unless restrained.

The prayer of the bill is that the contract of trust of October 22d, 1894, be declared to be fraudulent and void so far as complainant's interest in said stock is concerned and that the same be set aside and held for naught; that the defendant Dryenforth be required to surrender the certificates for said 550 shares of Fortimolite Metal Company stock held by him as trustee and standing in the name of defendant Miller, agent, and that the same be cancelled and that the said Fortimolite

[Rucker *et al.* v. Morgan.]

Metal Company be ordered and decreed to issue to complainant a certificate or certificates for the said 550 shares of stock; that, in the meantime, an injunction issue, restraining the defendant Miller from transferring or in any manner interfering with the certificates for said 550 shares of Fortimolite Metal Company stock, standing in his name as agent, and further restraining the defendant Dryenforth from in any manner disposing of said certificates in his hands as trustee, and the said Fortimolite Metal Company from transferring upon its books the said 550 shares of its stock to any person other than complainant; and further restraining the defendants Rucker, Seddon, Uehling and Miller, either as agent or otherwise, and each of them "from asserting any claim whatsoever to the said 550 shares of the stock of the said Metal Company, and from bringing any suit of any kind for the recovery of the same." And further restraining Miller and each of the defendants from voting said 550 shares of Metal Company stock at any meeting of the stockholders of said Fortimolite Metal Company; and commanding the said Fortimolite Metal Company, its officers and managers to recognize the right of your orator to said 550 shares of stock and to permit your orator to vote the same at any and all meetings of said company until the further order of this court; and that upon the final hearing of the cause, said injunction be made perpetual. There is prayer also for general relief.

Upon the filing of the bill, an injunction was issued, as prayed, and served upon the defendants Rucker and Seddon, who thereafter regularly appeared and separately moved to dismiss the bill on the ground that it contained no equity as against them or either of them. The defendants Uehling, Miller and Dryenforth and the Fortimolite Metal Company appeared specially for the purpose of making the motion and jointly and severally moved the court to dismiss as to them the bill of complaint exhibited against them in the case upon the ground that the court had no jurisdiction.

The court overruled the motion to dismiss for want of equity made by the defendants Rucker and Seddon and sustained the motion to dismiss for want of jurisdiction

as to the defendants Miller, Dryenforth and Fortimolite Metal Company, but overruled the motion as to Uehling, he having, since the filing of the bill, come within the jurisdiction of the court and been served with process. This decree is appealed from; and its rendition is here assigned as error.

JOHN P. TILLMAN, for appellants.—The bill in this case was without equity, and the motion to dismiss the same for the want of equity should have been sustained. *Sayre v. Elyton L. Co.*, 73 Ala. 85; *Galpin v. Page*, 18 Wall. 350; *Camden v. Swede Iron Co.*, 32 N. J. L. 15; Freeman on Judgment, (3d ed.), § § 567, 568; *Iron Age Pub. Co. v. W. U. Tel. Co.*, 83 Ala. 498.

We are aware that there is a difference between the office of a demurrer and that of a motion to dismiss for want of equity. The latter is not appropriate to reach mere defects or insufficiencies of pleading which are curable by amendment, but when "admitting the facts apparent on the face of the bill, whether well or illy pleaded, the complainant is without right to equitable relief," then a motion to dismiss will raise the question, and must be sustained.—*Seals v. Robinson*, 75 Ala. 363; *Hooper v. S. & M. R. R. Co.*, 69 Ala. 529.

TURNER & LATADY, *contra.*

DOWDELL, J.—The bill in this case was filed in the circuit court of Jefferson county under the act of February 18th, 1895, (Acts of 1894-95, p. 881), conferring chancery jurisdiction on that court. The primary and principal relief sought by the bill, which is evident from the averments and prayer of the bill, is to have the "escrow or trust agreement" of October 22d, 1894, declared fraudulent and void, and the certificates of stock placed in the hands of Dryenforth, as trustee, delivered up by him to be cancelled, and new certificates issued; incidentally and auxiliary to this the injunctions are prayed. The bill states that the respondents, Fortimolite Metal Company, the corporation issuing the stock, Dryenforth, the trustee, who has the certificates of stock in his pos-

session, and Miller, in whose name "as agent" the stock stands, are all non-residents of the State of Alabama, residing in, and being residents of, the State of Illinois. It is, also, clear from the statements of the bill, that the personal property, the stock of the defendant corporation, the subject of the suit, is without this State; and that the fraud and misrepresentations charged, which induced and procured the making of the agreement between the complainant and the defendant Miller, as likewise the execution or signing of the "letter" by complainant and Miller, of October 22, 1894, dated at Chicago, and which was addressed to Dryenforth, as trustee, transpired and took place without this State; also, the act, the issuance and delivery of the stock by the Metal Company to the complainant and said Miller, under its contract with these parties, and on which the suit is founded, was to be performed without this State. The bill was dismissed by the circuit court as to the defendants Miller, Dryenforth and the Metal Company, upon their motion to dismiss for want of jurisdiction.

At the time of dismissal of the bill by the court as to these parties for want of jurisdiction, it overruled the motion of the defendants Rucker and Seddon to dismiss for want of equity. From the decree of the circuit court overruling this motion to dismiss the bill for want of equity the appeal is taken to this court, and that decree is now assigned as error.

When courts of chancery must take cognizance of cases in equity against non-residents is determined by the second clause under section 669 of the Code of 1896, which reads as follows, viz.: "*Against non-residents.*— When the object of the suit concerns an estate of, lien or charge upon lands, or the disposition thereof, or any interest in, title to, or incumbrance on personal property within this State, or where the cause of action arose, or the act on which the suit is founded, was to have been performed in this State."

A court of equity, as a general rule, in its decrees, operates *in personam,* and must acquire jurisdiction of the person in order to compel his obedience to its mandates. This jurisdiction may be obtained by personal

service of the process of the court, or by the voluntary appearance of the defendant in court. Service of its process is limited and confined to the territorial boundary of the State, and in the absence of a voluntary appearance and submission to its jurisdiction by a non-resident defendant, it can acquire no jurisdiction as to such a person, except in cases provided for in the above statute, and then not of the non-resident personally, but in the language of the statute, "against non-residents," and to the extent and purpose of dealing with his interest in the subject matter of the suit, and over which the court has rightfully acquired jurisdiction. The cases mentioned in the statute are stated with sufficient clearness not to admit of a misunderstanding. The jurisdiction of the chancery court as to non-residents being therefore, purely statutory, must, as to such jurisdiction, be held strictly within the provisions of the statute.

No personal service had been had on the non-resident defendants as to whom the bill was dismissed, and their action in procuring the dismissal on their motion for want of jurisdiction makes it clear that no jurisdiction can be had or expected by a voluntary appearance. Under the averments of the bill the decree dismissing the bill for want of jurisdiction as to the non-resident defendants was proper.—*Iron Age Publishing Co. v. Western Union Tel. Co.*, 83 Ala. 498; *Sayre v. Elyton Land Co.*, 73 Ala. 85; *Galpin v. Page*, 18 Wall. 350; Freeman on Judgments, (3d ed.), § § 567, 568.

The allegations and charges in the bill in connection with these non-residents who were sought to be made parties defendants, as to the contract for the issuance of the certain described shares of stock, the fraud practiced in procuring the issuance of certain certificates in the name of Miller, and the delivery of the same to Dryenforth, as trustee, constituting the very *gravamen* of the action, taken in connection with the prayer of the bill and the relief sought, show them to be necessary and indispensable to the suit. After the dismissal of the bill as to these defendants, and who under its averments are shown to be necessary parties, the bill then stood as to any further proceedings thereon, just as though they

had not been made parties in the first instance; the allegations and charges remaining unchanged.

The relief prayed against Rucker and Seddon is simply and wholly injunctive. The bill expressly avers that these defendants, nor either of them, have any claim to or interest in the stock in question; that neither of them had any connection with the alleged fraud practiced by Miller on the complainant, but does aver upon information and belief, that they have demanded of Dryenforth the certificates, which were placed in his hands as trustee, under the joint letter of complainant and Miller of October 22, 1894, and have threatened Dryenforth with suit. This is the ground for the injunctive relief prayed against these two defendants. The letter of contract of October 22, which appointed Dryenforth trustee, provides in terms that he can only deliver the certificates placed in his hands upon the joint written request of complainant and Miller. The only reasonable inference to be drawn from the allegations of the bill as to the demand made on the trustee, Dryenforth, for the certificates of stock in his hands, by these two defendants, and their threatened suit, is that Dryenforth refused their demand, and hence the threat of suit. By the averments of the bill the defense at law to any suit brought by these defendants against Dryenforth for the recovery of the certificates, is perfect and complete, and it is too well settled to call for a citation of authorities, that under such circumstances a court of equity will not lend its aid by injunction.

The only remaining question is whether the motion to dismiss the bill is the proper practice, or should the objection be reached by demurrer. It was said by this court in the case of *Iron Age Pub. Co. v. West. Un. Tel. Co.*, 83 Ala. 506, a case very similar to the case at bar: "But in this case, where the granting and perpetuation of the injunction prayed for is the whole case made by the bill, we think it eminently proper that the question should be raised by demurrer, or motion to dismiss, when the defect of jurisdiction appears on the face of the bill, and is raised by a co-defendant." Again, it has been decided, that "when admitting the facts apparent on the

[Collier v. Wertheimer–Schwartz Shoe Co.]

face of the bill, whether well or illy pleaded, the complainant is without right to equitable relief," the objection may be made by motion to dismiss the bill.—*Seals v. Robinson*, 75 Ala. 363; *Hooper v. S. & M. R. R. Co.*, 69 Ala. 529.

Under these authorities, we think there can be no doubt that in this case, a motion to dismiss the bill for want of equity by the defendants Rucker and Seddon was proper and should have been granted.

The decree of the circuit court is reversed, and a decree will be here rendered dismissing complainants' bill for want of equity.

Reversed and rendered.

