# CASES

# SUPREME COURT OF ALABAMA

SPECIAL TERM   1914.

## Campbell, et al. v. Goldthwaite.

*Bill to Enforce Vendor's Lien.*

(Decided May 14, 1915.   Rehearing denied November 7, 1914.
66 South. 483.)

1. *Vendor and Purchaser; Lien.*—Where a vendor of land agreed to accept as part of the purchase money of the land bonds of a corporation to be formed, and the bonds were never issued or delivered, the vendor had a lien for such portion of the price as was represented by the bonds.

2. *Same; Waiver.*—Where the vendor sold certain lots to C., taking a mortgage on a part and agreeing to take bonds of a corporation to be formed for the balance of the purchase money, and the bonds were never issued or delivered, the taking of the mortgage did not constitute a waiver of the vendor's right to a lien on the unmortgaged portion, especially as against the mortgagee of the vendee with notice.

3. *Same; Payment.*—Where a contract for the sale of land provided for payment of part of the price in bonds of a corporation to be formed, and the contract was silent as to the amount of the bond issue, it will be construed to mean that the parties contemplated only the issuance of so many first mortgage bonds as would make the real value of the bonds equal to their par value.

APPEAL from Pike Chancery Court.

Heard before Hon. L. D. GARDNER.

Bill by Charles B. Goldthwaite against M. B. Campbell and W. P. McGaugh, to enforce a vendor's lien. Decree for complainant and respondents appeal. Affirmed.

1—189

See, also, 179 Ala. 674, 60 South. 1034.

The bill alleges complainant to be a resident of Pike county, and the respondent to be a resident of Montgomery county, and that the land the subject of the suit is situated in Troy, Pike county; that prior to the 6th day of May, 1909, complainant was seized and possessed of certain real estate which is described, and that on said day complainant sold above described land to the said Campbell at and for the sum of $17,500, and executed to him a deed of conveyance, marked "Exhibit A" and made a part hereof; that on the purchase price Campbell paid $3,300 in cash, $3,700 in and by a first mortgage on a portion of said land, which is set out and described in the mortgage, the mortgage being made "Exhibit B;" and it being further alleged that said mortgage had been sold and transferred to one B. H. Ingram, and was now the property of said Ingram, also a note for $2,000, due June 6, 1909, which note was paid to complainant; that the balance of said purchase money for said lot, amounting to $8,000, was to be paid in the manner hereinafter provided, and was by agreement between said Campbell and complainant retained by Campbell for the following purposes: Said Campbell agreed to promote or cause to be promoted a corporation who would execute and issue bonds to be secured by a first mortgage on all of the above real estate except the part embraced in the mortgage above set out, with the improvements to be erected thereon, said bonds bearing interest at the rate of 6 per cent. per annum, and of which bonds the said Campbell agreed to deliver $8,000 to the Troy Bank & Trust Company in trust for the following uses: (1) To collect the interest and pay the same to Goldthwaite during the term of his natural life, but in the event that Goldthwaite's wife should die before he did, the trust was

to cease, and the bonds to be delivered to Goldthwaite or his assigns free from the trust. (2) In the event Mrs. Goldthwaite should survive Goldthwaite, said trustee shall continue to collect the interest on said bonds, the same to constitute a fund subject to the payment of whatever sum of money that a court of competent jurisdiction shall decree that the said Mrs. Goldthwaite is entitled to receive as interest upon her dower rights in and to said real estate, and upon her death, or the fulfillment of such decree, the said bond shall be delivered over to the personal representative, heirs at law, or devisees of said Goldthwaite in accordance with the laws of distribution then in force, freed from any other trust or condition. (3) Providing for a disposition of the bonds and the interest in the event Mrs. Goldthwaite survived Goldthwaite, and any part of said real estate is by any court of competent jurisdiction set apart and assigned to her by metes and bounds in satisfaction of her interest therein. Said Campbell obligated himself to promote the execution and issuance of the bonds hereinabove mentioned, under the conditions and stipulations herein named, on or before six months from the date of the execution of said agreement, and the said agreement was made and entered into on the 6th day of May, 1909, contemporaneously with the execution of the deed herein referred to to the said Campbell, and as a part of the same transaction, a copy of the agreement being attached and marked "Exhibit C" and made a part hereof, with the further allegation that said agreement was recorded in the probate office of Pike county; that the said obligations of the said Campbell to promote the company and have said bonds issued and delivered was a part of the consideration to be paid by him to complainant for said land. It is further al-

leged that nothing has been done pursuant to said agreement, no bonds have been issued, and no bonds delivered as provided therein, and the whole scheme appears to have been abandoned by said Campbell, to execute said agreement; that afterwards, and after the plans of Campbell to organize a hotel company and erect a hotel on said lot, said Compbell executed to one W. P. McGaugh a mortgage on said land, bearing date December 24, 1910, purporting to secure an indebtedness of $6,246.82, due and payable June 6, 1911, which mortgage was filed for record and recorded in the probate office of Pike county, a copy of which is made an exhibit to the bill. It is then averred on information and belief that McGaugh claims the lien under and by virtue of said mortgage, but complainant avers that his lien is superior to that of McGaugh, as the said McGaugh had notice of the facts and the lien of complainant at and prior to the execution of said mortgage from Campbell, and therefore is not an innocent purchaser without notice. It is then averred that complainant has a lien on all the land conveyed in the deed except the strip embraced in the mortgage which complainant had sold to Ingram. It is averred that Campbell is insolvent, and complainant has no other way of enforcing payment due him. The demurrers and answer raise the questions discussed in the opinion.

STEINER, CRUM & WEIL, and W. P. McGAUGH, for appellant.

E. R. BRANNAN, for appellee.

ANDERSON, C. J.—While the general rule is different, Alabama has gone the full length in preserving the

[Campbell, et al. v. Goldthwaite.]

vendor's lien in order to secure the purchasing price of land, and it has been the long-established rule of this jurisdiction that when the consideration for the sale of land is the delivery of chattels, which are capable of reduction to a money value, a lien exists for the collection of such value, upon a failure to deliver them in accordance with the terms of the contract.—*Neel v. Clay*, 48, Ala. 252; *Smith v. Vaughan*, 78, Ala. 201. It has also been held that an undertaking to deliver bonds is within this rule.—*Cordova Coal Co. v. Long*, 91 Ala. 538, 8 South. 765; *Bridgeport Land Co. v. Am. Fire Proof Co.*, 94 Ala. 592, 10 South. 704. The agreement between the parties was of the same date of the deed and was contemporaneous therewith, and the two instruments should be construed together. We think that the meaning of the contract is that Campbell was to promote a company to develop and improve the property and was to satisfy the balance due the complainant with $8,000, 6 per cent, interest-bearing bonds to be deposited with the bank.

The contract is silent as to the amount of the bond issue, but should be so construed as to mean that the parties contemplated only such a limited amount of first mortgage bonds as would make the real value of same equal to their par value, and did not intend that such an unlimited or disproportionate amount should be issued as to render the value of same considerably below par, or to make the ascertainment of the value of same practically impossible in case of a failure by the said Campbell to comply with his contract. When contracts are susceptible of a reasonable construction which will uphold them, courts should, in an effort to promote justice, so construe them, and not place a construction upon them which will defeat the contract and thus obstruct justice.

The case of *Walton v. Young,* 123 Ala. 150, 31 South. 448, is not in conflict with the above-cited authorities or with the present holding. There the court did not hold that there could be no vendor's lien on the land for the value of chattels or bonds agreed to be delivered as a consideration for the purchase of the land, and which were not delivered. The holding was that, as the vendor agreed to take certain notes of third persons as the consideration for the purchase of the land, the delivery of same by the vendee and the acceptance of same by the vendor operated as a novation or satisfaction of the consideration, and was a waiver of the vendor's lien. Just as we would now hold, if this respondent Campbell had delivered the bonds as required by the contract, this complainant would have to accept them, and after doing so he could not enforce a vendor's lien on the land, as the bonds would operate as a novation of the purchase price, and which was also the effect of the holding in the case of *Cordova Co. v. Long,* supra. Nor does the case of *Burroughs v. Burroughs,* 164 Ala. 329, 50 South. 1025, 28 L. R. A. (N. S.) 607, 137 Am. St. Rep. 59, 20 Ann. Cas. 926, conflict with the present holding or the authorities relied upon in this opinion, and the facts there are so unlike the ones in the present case that a discussion of same is unnecessary. The case of *Parrish v. Hastings,* 102 Ala. 414, 14 South. 783, 48 Am. St. Rep. 50, does not question, in the slightest, the cases supporting this opinion, and if said holding modifies any former adjudication, it is the case of *Hooper v. S. & M. R. R. Co.,* 69 Ala. 529, and which said *Hooper Case* has no resemblance to this case, except that in each case the bill sought the enforcement of a vendor's lien.

We gather from the facts in this case that the wife of complainant did not join in the deed, and the agree-

ment, therefore, provided for a deposit in trust of the bonds to protect the purchasers from the dower right of the wife, in case she survived the husband, but these respondents need feel no concern in the matter, unless Campbell wishes to pay up and keep the property, in which event a court of equity can, upon an appropriate request, enforce the trust in the proceeds of the sale to satisfy the lien, or which trust could possibly be enforced by the owners of the other part of the lot, as the wife seems to have not relinquished her dower to any of the land embraced in the deed, and the agreement was evidently intended to protect the land from a future claim of the wife to a dower in same. This fact, however, should not enable the respondent, or any purchaser from him with notice, to hold the land in question without complying with the agreement of purchase.

It is next insisted that the lien was waived for the reason that the vendor took a mortgage to secure a part of the purchase price upon a part of the land sold, but purposely omitted the strip in question from the mortgage in order that the vendee could use it in the promotion and organization of the proposed corporation; also that the retention of the lien upon the strip in question would operate in law as a fraud upon the proposed corporation and the purchasers of its stock and bonds. Had the vendor taken a mortgage on all the land to secure the purchase money, this would doubtless have been a waiver of the vendor's lien, in the absence of an express retention of same.—*Fields v. Drennen*, 115 Ala. 558, 22 South. 114. Or if he had taken a mortgage on all the land for but a part of the unpaid purchase money, this would probably be a waiver of the lien as to the balance, or had he taken a lien on a part of the land for all of the un-

paid purchase money this would probably operate as a waiver of the lien on so much of the land as was omitted from the mortgage; but he took a mortgage only on a part of the land for a part of the unpaid purchase money, and which evinces an intention to preserve the vendor's lien for so much of the debt not embraced in the mortgage upon so much of the land as was omitted from the said mortgage, and which was the strip in question. In other words, while the conveyance was for a stated sum and of all the tract, it seems that by agreement the purchase price was split, and the land was, figuratively speaking, divided into two tracts, the vendor taking a mortgage on one part thereof for a certain part of the purchase money, and expected to be paid the balance of the purchase money with bonds of the proposed corporation and in the promotion of which the strip in question, being that part of the land omitted from the mortgage, was to be utilized.

It is true that the lien which equity, on principles of natural justice, creates as a security for the purchase of land sold and conveyed is the subject of waiver, express or implied, from the acts of the parties. Generally the lien is regarded as waived if the grantor accepts any distinct or independent security, the authorities varying in the application of the rule to particular facts. There are cases in which no one of several acts is, of itself, sufficient. In such cases all the facts and circumstances should be considered, and if it appear that the vendor did not intend to look to the land, but to rely on a substituted, independent security, or on the personal responsibility of the vendee, the presumption is rebutted, and the retention of the lien repelled.—*Acree v. Stone*, 142, Ala. 156, 37 South. 934.

[Campbell, et al. v. Goldthwaite.]

"The whole question of waiver is conceded to be purely one of fact, or intention, and the burden of proof is always on the purchaser to establish, in the particular case, that the lien has been intentionally displaced, or waived, by consent of the parties, express or implied. If it remain in doubt, then the lien must be held to attach."—*Tedder v. Steele*, 70, Ala. 347.

Here we have no separate or independent security or collateral, but a mere agreement by the parties that the purchase money for the strip of land in question should be satisfied by first mortgage bonds to be issued by the proposed corporation. Had the corporation been organized and the bonds issued and delivered, this would have operated as a satisfaction of the purchase price and an extinguishment of the vendor's lien, or it might be that the lien could not prevail against the stockholders of the corporation or purchasers of the bond, who had no notice of the lien, or of the contract, or who might not be responsible for a nondelivery of the bonds by Campbell to the complainant after the issuance of same; but we are not dealing with a bona fide purchaser from Campbell, or with a corporation which he should have organized, under the terms of the agreement. We are dealing with the vendor and vendee, and one whom the bill charges took a mortgage from Campbell with full notice of the vendee's rights and equity, and instead of the enforcement of the lien being a fraud upon any one, the nonenforcement of same would reward an insolvent vendee for not performing his contract, and operate to give him and his mortgagee with notice the complainant's land with little or no prospects for being paid for same. It would be almost, if not quite, a travesty upon justice to hold that this insolvent vendee, who had failed to perform his contract, should hold this complainant's

[Little v. Britton, et al.]

lot upon the pretext that the lien had been waived simply because the said Campbell was authorized to promote a corporation which should use and develop the property and from whose bonds the complainant was to be paid for the land. We are not disposed to hold that the vendor intended to relinquish his lien upon the property, in any and all events, and relied solely and entirely upon the personal obligation of Campbell to pay him for the lot in the event said Campbell failed to perform the contract and deliver to him the first mortgage bonds of the proposed corporation.

The judgment of the chancery court is affirmed. Affirmed.

McCLELLAN, SAYRE, and SOMERVILLE, JJ., concur.